## TAD O. McCOY,
### PERSONAL REPRESENTATIVE OF THE WILL AND ESTATE OF JOSEPHINE McCOY, DECEASED v. DEPARTMENT OF REVENUE

William G. Dick, Dick & Dick, The Dalles, represented plaintiff.

James D. Manary, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision on briefs for defendant rendered June 18, 1975.

CARLISLE B. ROBERTS, Judge.

The plaintiff is the duly appointed and acting personal representative of the Estate of Josephine McCoy, deceased. The estate is being probated in Wasco Coun-

ty (File No. 4500). At the time of her death, February 21, 1974, the decedent owned specified real property in Sherman County which had received special assessment for farm use under ORS 308.370(1) and which was valued by the estate for inheritance tax purposes at $46,000. Defendant increased this value as of the date of death, February 21, 1974, to $57,820, on the basis of its interpretation of ORS 118.155. The plaintiff's appeal of the deficiency was denied in defendant's Order No. IH 75-1 (dated January 22, 1975), hence the appeal to this court.

There is no dispute that the subject property had been classified and approved by the county assessor as coming within the farm use value statutes and that it had been assessed accordingly as of January 1, 1973, and January 1, 1974. The problem presented is the construction of Or Laws 1973, ch 503, § 13, codified as ORS 118.155 (1973 Replacement Part), effective October 5, 1973. The section reads:

"Interests in real property passing by reason of death that had received special assessment as farm use land under subsection (1) of ORS 308.370 *for the tax year immediately preceding the date of death* of the decedent shall be valued for the purposes of ORS 118.005 to 118.840 at its value for farm use determined by the assessor under subsection (1) of ORS 308.370 *for the tax year immediately preceding the date of the death of the decedent.*" (Emphasis supplied.)

Under its construction of this statute, the defendant, pursuant to the rule-making power found in ORS 305.100, duly promulgated OAR 150-118.155 ("Value of Land in a Farm Use Zone"), the first paragraph of which reads:

"Land which is within a farm use zone and had received special assessment under ORS 308.370(1) for the tax year immediately preceding the date

of death shall be valued for inheritance tax purposes at its farm use value determined by the assessor for the tax year immediately preceding the date of death. *For a death in the calendar year 1974, the farm use value determined as of January 1, 1973 under ORS 308.215(5) is applicable."* (Emphasis supplied.)

It is the plaintiff's position that the "tax year immediately preceding the date of the death" referred to in ORS 118.155 and applicable to this case is the property tax year which began July 1, 1972, and ended June 30, 1973. As the decedent's death occurred February 21, 1974, the farm use value established on the assessment date of January 1, 1972, for the fiscal year beginning July 1, 1972, would be appropriate, under plaintiff's interpretation. The plaintiff, in effect, distinguishes "assessment year" and "fiscal tax year" and finds no ambiguity in the pertinent statute. "Tax year," in his view, must be the period July 1, 1972-June 30, 1973.

The defendant contends, as stated in its opinion and order: "Land is assessed every 12 months on January 1. It is this 'tax year' that the statute refers to." The opinion of the defendant goes on to state:

"The Petitioner [plaintiff] interprets 'tax year' in the property tax sense as meaning the July 1-June 30 period. If the property tax definition of 'tax year' is adopted, it appears that the Petitioner might be correct. However, we are dealing here with the inheritance tax statute and, within this context, the only reasonable construction of 'tax year' under ORS 118.155 is as a reference to the prior calendar year. Otherwise, as the Petitioner now contends, the estates of decedents dying prior to July 1 of a calendar year could report the value of farmland in the estate from a determination made over two years prior to the decedent's death,

while ignoring a value determination made one year closer in time. * * *"

The question presented to the court is the intent of the Legislative Assembly in its use of the words "tax year" in Or Laws 1973, ch 503, § 13, an act relating to farmlands and containing amendments to sections on zoning, property tax assessment, the amendment to ORS chapter 118 herein construed, and an amendment to the personal income tax law found in ORS chapter 316.

The court has been unable to find a definitive construction of the words "tax year" in the statutes or the case law. The term is ambiguous because, for many years, it has regularly been used by the legislature in connection with the "assessment year" beginning January 1, and also in connection with the state and local fiscal year beginning July 1. An examination of the pertinent property tax chapters, ORS 308, 309, 310 and 311, and of the effective dates used in ad valorem property tax acts proves this conclusion.

It is ordinarily recognized that January 1 is the "assessment date" for each tax year, the date as of which the true cash value is determined by the county assessor as to each item of taxable property (ORS 308.250) and the date the lien of personal property taxes is effective (ORS 311.405(3)).

It is also clearly understood that the fiscal administration of the state and of local governments is on a fiscal-year basis, beginning on July 1 and ending on the following June 30 (ORS 293.605 and ORS 294.095) and that the tax lien on real property is effective on July 1 (ORS 311.405(2)).

The Department of Revenue and its predecessor, the State Tax Commission, over a substantial period of

time, have published a useful "Calendar of Assessment and Taxation Procedures,"[①] listing in chronological order all the statutory dates specified in the various property tax acts. The list vividly illustrates the myriad of details required for the metamorphosis of an assessment roll (ORS 308.215) into a tax roll (ORS 311.105 to 311.115). It demonstrates the necessity of a six-month period prior to the taxing districts' fiscal year in which to engage in preliminary assessment work. This tremendous effort must be completed before July 15 when the districts file notices of tax levies with the county assessor (ORS 310.060). It would simplify matters if there was uniform recognition that the 18-month period contains two overlapping elements; i.e., the "assessment year" beginning January 1, and the "tax year" beginning July 1. However, there is no doubt that the legislature has created ambiguity by using "tax year" in connection with both dates.

The examination of ORS chapters 308 to 311 reveals many references to tax periods, variously described. The expressions "current year," "ensuing year," "prior year," and even "tax year" are frequently found without definition but the meaning is readily determinable by the context. Some references are applicable to years beginning January 1, others to years beginning July 1. In many instances, both in old and new statutes, additional words are used which clearly distinguish the years referred to, indicating a legislative recognition of an "assessment year" (beginning January 1) and a "tax year" (beginning July 1), but there is no overall consistency and there is some outright contradiction.

In support of the view that "tax year" means the fiscal year, beginning July 1, are the following exam-

---

① Found presently in the publication "Oregon Laws and Administrative Rules Relating to Property Assessment and Taxation (1973)," at 4-6.

ples given in their numerical order by ORS reference (emphasis being supplied by the court in each instance):

308.207. "* * * The *assessed value* [for bonding purposes] shall be the value used * * * for the *most recent fiscal year, * * *.*"

308.219, relating to "printouts" required when assessment and tax rolls do not constitute written records, provides:

"(3) The assessment *and* tax roll shall be printed out in full, *as of the June 30 which is the end of the fiscal year* for which the roll was prepared. * * *"

310.125, relating to a special rule for computing maximum amount of certain continuing levies:

"(1) Effective *for the fiscal year 1962-1963* and subsequent fiscal years, the authorized amount of any continuing property tax levy * * *."

310.395(2), relating to ballot statements to be submitted to a vote of the people, there is required to be printed the amount "the levy of property taxes *for the fiscal year beginning July 1 of the current calendar year* is increased or decreased * * *" as follows:

"If this measure is approved, the operating budget to be financed by local taxes *for the tax year 19—-19—* will be $———— greater (or less) than the operating budget financed by local taxes for the preceding year."

310.595 refers to the *"tax roll for the fiscal year."*

310.608(1) refers to *"each tax year beginning on July 1* of the following years: * * *" (running from 1969 to 1979), and subsection (2) refers to "[f]or *tax years beginning on July 1,* 1980, and thereafter, * * *."

311.275 provides that, as between the grantor and the grantee of real property, when there is no express

agreement as to payment of the taxes on the property becoming due and payable *"for the fiscal year* in which the sale occurs, the grantor is liable for the same proportion of the taxes as the part of the fiscal year prior to the day of the sale of the property bears to the whole of the fiscal year, and the grantee is liable for the remainder of the taxes."

311.361(1), describing the form of the tax receipt to be given to the taxpayer, provides:

"(1) Every tax receipt shall state plainly on its face the name of the county, *the fiscal year for which the taxes* entered therein *have been levied* followed by the word 'Taxes.' * * *"

311.375, an old statute providing for forwarding state taxes collected by county tax collectors and paid over to county treasurers, with the proviso that the county treasurer, on or before December 1 is to pay to the state treasurer "one-half of the amount of state taxes charged to his county for the *fiscal year* then current. In similar manner the county treasurer shall pay over one-quarter of such taxes on or before March 15, and remainder of such taxes on *or before June 30, of the fiscal year."*

311.531, relating to the tax collector's annual statement compiled from the tax rolls, requires a statement "showing separately *for each tax year* for the prior seven years the following information as to transactions *during the past fiscal year ending June 30:* * * *."

On the other hand, January 1 is often found related to the "assessment" or the "assessment year." See ORS 308.210, 311.678 and 311.686. But ORS 308.660 is anomalous:

"Chapter 586, Oregon Laws 1951, shall be given effect retroactively to include *the tax year commencing on, and the assessment date of, January 1, 1951."*

The impact of this is somewhat diluted by a later statute, ORS 311.410, which makes clear that although the assessment date, January 1, establishes the status of property as taxable or nontaxable, if the status is changed between January 1 and June 30, just before the fiscal year beginning July 1, such change can be noted for tax purposes for the ensuing fiscal year beginning July 1, suggesting that the "assessment year" and the "tax year" are distinguished and the preliminaries to making the tax roll during the first six months of the "assessment year" are merely preparatory.

Since Oregon Laws 1951 is referred to in "anomalous" ORS 308.660 quoted above, an examination has been made of other ad valorem tax amendments in the same volume of the session laws and it is found to contain numerous variances in language used to express effective dates. The court has supplied the emphasis in the following examples: In Or Laws 1951, ch 541, § 2, at 937, a statute relating to refunds of property taxes provides that the amendments "shall apply to taxes levied on *assessments for 1951-52* and subsequent fiscal years. * * *" Chapter 577, § 2, relating to the correction of assessment or tax rolls, states, at 1013, that the amendments shall apply "*to assessment and tax rolls* for the *fiscal year 1951-52* and subsequent fiscal years. * * *" In ch 579, § 1, at 1017, it is provided that the amendment "shall first apply to the state levy of taxes for the *fiscal year 1951-52.* * * *"

Inasmuch as the effective date clause of a newly enacted measure is often regarded by the Legislative Counsel as a "temporary section," effective date provisions enacted by the legislature may often be found in the session laws and not in the Oregon Revised Statutes. For a further examination of the legislative use of language in this area, an examination has been made

of ad valorem property tax statutes enacted by the legislature and printed in Oregon Laws 1973. (The court has supplied the emphasis in the examples which follow.)

In Or Laws 1973, ch 17, § 62, at 51, an amendment to ORS 310.608 contains the words "(1) for *tax years beginning on July 1*, 1973, and thereafter, * * *." Chapter 62, § 2, relating to ad valorem taxation of personality, provides, at 114, that "[t]his amendment * * * applies to *tax years beginning on or after January 1*, 1974." Chapter 105, § 1, at 188, relating to property taxes and amending ORS 310.395, refers, in subsection (2), to the "levy of *property taxes for the fiscal year beginning July 1* of the current calendar year * * *" and provides for a ballot notice reading: "If this measure is approved, the operating budget to be financed by local taxes for *the tax year 19——19*— will be $——— * * *." Chapter 218, § 2, provides, at 367: "This act applies to *assessment years beginning* on and after *January 1*, 1972." Chapter 234, § 2, relating to ad valorem taxation, amending ORS 307.-120, prescribes, at 401: "The amendment of ORS 307.120 by section 1 of this Act takes effect July 1, 1974." Chapter 303, at 555, relates to ad valorem taxation and its § 1 (deemed temporary and therefore not codified) refers to applications for farm use assessment "for either or both of the *tax years 1972-1973* and 1973-1974, * * *." Chapter 382, § 8, relating to certain tax exemptions, states, at 763: "This Act applies to *tax years beginning on and after January 1*, 1974." Chapter 402, § 13, at 831, amends the provisions of ORS 309.032 relating to the notice posted by the county assessor in his office, requiring it to read:

"The assessed valuation of locally assessed taxable property assessed by the county assessor's office in ——— county, as entered on the

[19——19—] *assessment roll for January 1, 19—*, is — percent of the true cash value of such property."

Chapter 503, at 1053, contains § 13, the section being construed in the subject case, now codified as ORS 118.155, relating to value for farm use as determined by the county assessor "for the *tax year* immediately preceding the date of the death of the decedent." Chapter 505, § 4, relating to ad valorem taxation, provides, at 1093, that "[s]ection 3 of this Act applies to all *assessment years beginning* on and after *January 1, 1973, * * *.*" Chapter 670, § 2, again amending ORS 310.608 as to inventory tax relief, contains, at 1478: "The amendments * * * apply to *assessment years beginning on and after January 1, 1973.*" The recognition of the January 1 "assessment year" and the fiscal year as the "tax year," is predominant, but with enough exceptions to clearly illustrate the continuing ambiguity of "tax year."②

---

② Corroboration of the foregoing conclusion is found in an examination of ad valorem property tax bills printed for the 1975 Regular Session of the Legislative Assembly (noted below, with emphasis supplied). Senate Bills 14, 16, 17, 19, 209, 262, 326, 769, 783, 922 and 961 uniformly use language duplicating or similar to: "This Act applies to *assessment years* beginning on and after *January 1, 1976.*" However, Senate Bill 46 states: "Section 2. This Act applies to *tax years beginning after December 31, 1975.*"

An examination of the first eight ad valorem property tax measures filed in the House of Representatives reveals the following effective date clauses: HB 2149, "Section 7. This Act * * * applies to *tax years beginning after June 30, 1976.*" HB 2202: "Section 2. This Act applies to *assessment years beginning on or after January 1, 1976, * * *.*" HB 2327: "Section 2. The amendments * * * apply to *tax years beginning* on and after *July 1, 1975.*" HB 2333: "Section 5. This Act applies to *assessment years beginning on or after January 1, 1976.*" HB 2367: "Section 2. The amendments * * * apply to *tax years beginning on and after January 1, 1975.*" HB 2462: "Section 5. This Act applies to *tax years beginning on and after Janu-*

Plaintiff has relied on the case of *Ewauna Box Co. et al. v. Weyerhaeuser,* 198 Or 360, 255 P2d 121 (1953), which construes the words "current taxes" as determinable by the lien date. Since personal property was involved in that case, the court stated, at 366:

> "Property is assessed only once for each tax year, and we hold that the tax year for personal property commences with the first day of January and terminates on the 31st day of December in each year. Although, in fact, the levy of the tax is not made until the month of July, the assessment is completed and the tax is regarded as assessed on the first day of January * * *."

By analogy, the plaintiff concludes that the "tax year" for real property must be the fiscal year July 1-June 30, inasmuch as the statute provides that the lien date for real property is July 1.

The court's decision in *Ewauna Box Co., supra,* notes that its conclusion that the personal property tax year commences on January 1 and terminates on December 31 is confirmed by the effective date clause used by the legislature in Or Laws 1951, ch 586, § 30, which reads, at 1045:

> "This Act shall be given effect retroactively to include the *tax year commencing on, and the assessment date of, January 1, 1951."* (Emphasis supplied.)

The case illustrates this court's thesis that the use of "tax year" by the legislature, in connection with effective dates, has been used ambiguously but that the legislative intent can be found in the context with sufficient certainty for practical purposes.

---

*ary 1,* 1977." HB 2463: "Section 7. * * * the amendments * * * apply to *assessment years beginning on and after January 1,* 1976." HB 2549: "Section 6. This Act shall apply to property *taxes levied for the fiscal years beginning on and after July 1,* 1976."

Having come to the conclusion that the words "tax year" in ORS 118.155 (1973 Replacement Part) can refer to a period beginning January 1 or to a period beginning July 1, the argument of the defendant favoring January 1 becomes persuasive in this instance. The following material is copied from the Defendant's Answering Brief, at 3-5, which the court adopts as its own:

"As a general rule, the time as of which the value of property is to be determined for inheritance tax purposes is the date of the decedent's death. ORS 113.165; * * *. ORS 118.155 allows farm use land to be valued at its farm use value rather than full market value. In order to expedite this valuation, the statute creates an exception to the general rule by providing that the farm use value already established on the tax roll will be used rather than attempting to determine farm use value as of the decedent's death. Thus, we have an inheritance tax statute utilizing an established property tax valuation in order to expedite the inheritance tax process.

"Within this inheritance tax setting, the only reasonable construction of the words 'tax year' is as a reference to the preceding calendar year. Using the assessment as of January 1 of the preceding calendar year would insure that the valuation has had time to be scrutinized by a board of county equalization and by the Department of Revenue, has been placed on the tax rolls and has given the taxpayer an opportunity to challenge that valuation. In addition, the date of valuation would not be too far removed from the critical inheritance tax date, the date of the decedent's death.

"The facts at hand demonstrate the unreasonable result that is reached by using the property tax definition of 'tax year.' Mrs. McCoy died on February 21, 1974. Her farm land had been recently valued as of January 1, 1974. To use this valuation could easily lead to a challenge of that valua-

tion and a consequent delay in the closing of the estate.[9] Utilizing the established valuation as of January 1, 1973 would avoid such a problem and expedite the closing of the estate. The plaintiff, however, argues for the January 1, 1972 valuation, 25 months prior to the decedent's death, by using the property tax definition of 'tax year.' Such a construction is unreasonable within the context of the inheritance tax process.

"Under the plaintiff's construction of the statute, the estates of decedents dying prior to July 1 of a calendar year would report the value of farm land in the estate from a determination made over two years prior to the decedent's death, while ignoring a value determination made one year closer in time. The estates of decedents dying after July 1 of a calendar year would, in contrast, be required to use the more recent value determination for valuation of the farm land in their estates. Under a construction of the words 'tax year' as meaning calendar year, all farm land in the estates of decedents dying in any one calendar year would all be valued as of the same date.

"It is apparent that the words 'tax year' are susceptible to two possible constructions, * * *."

The brief then cites *Curly's Dairy v. Dept. of Agriculture,* 244 Or 15, 21, 415 P2d 740, 743 (1966):

"* * * A statute is to be construed with reference to its manifest object, and, if the language is susceptible of two constructions, one which will carry out and the other defeat such manifest object, it should receive the former construction.

"Further, the interpretation of an ambiguous statute by an agency charged with its administration is entitled to great weight, although it is not

---

[9] *Note by the Court:* Since a "year," as a unit, must contain twelve months, and the year referred to by ORS 118.155 must be completed before decedent's death, the assessment year beginning January 1, 1974, cannot be considered in this case.

binding on the courts. *Van Ripper v. Oregon Liquor Cont. Com.,* 228 Or 581, 365 P2d 109 [(1961)]; *Gouge v. David, et al.,* 185 Or 437, 202 P2d 489 [(1949)]; *City of Portland v. Duntley,* 185 Or 365, 203 P2d 640 [(1949)]."

The court finds that in the construction of ORS 118.155 the "year" must be a unit of 12 months which preceded the date of the death of the decedent. The unknown factor which the legislature sought to determine for inheritance tax purposes was the assessed value for farm use purposes as determined within that unit of time. This determination of value is regularly made as of January 1 of each year. Logically, legislative intent requires that "tax year" in this instance means "assessment year," and for this case, the value as of January 1, 1973.

The defendant's Order No. IH 75-1 is affirmed.

Defendant is entitled to its costs and disbursements incurred herein.