BERNARD SHEVACH, Judge pro tem.
 

 Plaintiff has appealed from the Department of Revenue’s Opinion and Order No. VL 78-75, executed on February 28, 1978, which sustained the decision of the Multnomah County Assessor in his addition of a portion of plaintiffs personal property to the tax rolls as omitted property pursuant to ORS 311.207 to ORS 311.211.
 

 The facts from which the controversy arises are essentially uncontested. Among these uncontested facts are the following:
 

 Plaintiff, which engaged in the sale of items of personal property and held personal property inventories as of January 1,1974, failed to file a Multnomah County personal property tax return for the year 1974,
 
 *
 
 which it was obligated to do on or before March 3, 1974, in accordance with ORS 308.290. A substantial portion of plaintiffs Oregon inventory consisted of items produced outside of the state and temporarily warehoused by plaintiff for the purpose of transshipment and sale in the ordinary course of trade or business to an out-of-state destination other than the
 
 *[161]
 
 county of origin. Pursuant to the provisions of ORS 307.810 to ORS 307.830, these items, while temporarily warehoused in Oregon as an incident of the transit process, were deemed by statute to have no situs in Oregon and would have been exempted from ad valorem taxation if an appropriate exemption claim statement had been written and filed with the Mult-nomah County Assessor on or before April 1, 1974. Plaintiff failed to file the exemption statement within the specified time limitation; thus, under the statutory mandate of ORS 307.830, the exemption was not allowable for the year 1974. In fact, plaintiff at no time filed an exemption statement for the year 1974. This exemption will hereinafter be referred to as the "free port” exemption.
 

 Because of the failure of the plaintiff to file the required personal property return, the assessor, under ORS 308.290(4), had the duty to list and evaluate personal property from the best information obtainable from other sources. After having so listed and evaluated the property, on May 1,1974, the assessor’s office mailed to the plaintiff a form notice (PI Ex 1) (signed by R. W. McBride, a witness in this suit), stating the following:
 

 "We regret that, according to our records, you have neither filed an Assessment Return form as provided by law, nor answered our previous requests.
 

 "At this date, we have no other alternative than to notify you that unless we can have IMMEDIATE approval of the assessment as shown below, it will be our duty to certify the account to the Tax Collector for collection of the 1974 taxes.
 

 "Your acknowledgment will prevent us from taking this action. Please sign below and return to this office at once.
 

 "The
 
 assessed valuation
 
 for 1974 Personal Property tax has been fixed as follows:
 

 MDSE 534,710
 

 OFFICE 124,770
 

 MACH & EQUIP 776,665
 

 $1,436,145”
 

 
 *[162]
 
 The above form notice was signed and approved by the plaintiff on May 9, 1974. The notice itself was dated May 1, 1974, and was received by the plaintiff on May 2, 1974.
 

 Based on the assessed valuation in the May 1,1974, notice, a personal property tax bill of $33,966.64 was determined by the assessor’s office and was paid in full by plaintiff.
 

 It should here be noted that ORS 307.475 would have allowed plaintiff to apply on or before December 15,1974, to the Director of the Department of Revenue for a recommendation that the value of property assessed by reason of the failure to file a timely exemption claim be stricken from the assessment rolls on the grounds of "hardship.” To establish hardship under the statute, plaintiff would have had to prove that the assessed property would have been exempt had there been a timely filing of the free port exemption claim and that the failure to make timely application for exemption was by reason of good and sufficient cause. Under the process of the statute, the property assessed would have been stricken from the assessment roll, in whole or in part, in the event recommendations favorable to any hardship claim plaintiff might have advanced were rendered by the Director of the Department of Revenue and various other governmental bodies named in the statute. Plaintiff did not file the hardship application, contending, as this opinion will subsequently develop, that it assumed that the merchandise valuation of $534,710, established in the May 1, 1974, notice, reflected a residual valuation after allowance by the assessor of a free port exemption, and that the plaintiff regarded the residual valuation as reasonable.
 

 On May 12, 1977, which was approximately three years after the plaintiff had agreed with the assessor’s valuation set forth in the May 1,1974, notice and paid the tax bill based on such valuation, and approximately two and one-half years after the deadline for filing a
 
 *[163]
 
 hardship application had lapsed, the assessor’s office, by letter, advised plaintiff that an audit of plaintiffs records revealed that plaintiff had held an inventory with an assessed value of $2,541,897 as of January 1, 1974. In its letter (PI Ex 3), the assessor’s office stated that it considered the difference between the inventory value of $2,541,897 and the prior assessed inventory value of $534,710, or $2,007,187, to be omitted property which the assessor intended to add to the assessment rolls and, in fact, subsequently did. The assessor did not classify any portion of the $2,007,187 as personal property which would be entitled to the free port exemption under ORS 307.810.
 

 In the prior years of 1971,1972 and 1973, plaintiff claimed and was granted a free port exemption by the assessor’s office. The assessed value of the free port inventory personal property exempted for each of the foregoing years was the following: 1971—$705,956; 1972—$541,516; and 1973—$993,308. (PI Ex 7.) The assessed values of plaintiffs personal property inventory that was not exempted as free port merchandise (because the items were not shipped outside of the State of Oregon for ultimate sale) were assessed for the same years in the following amounts: 1971— $518,495; 1972—$521,225; and 1973—$486,100. In the year 1974, no free port exemption was granted because of plaintiffs failure to file the necessary exemption form but, in the subsequent years of 1975, 1976 and 1977, the assessed value of exempted free port inventory property was in the respective annual amounts of $903,669; $1,263,422; and $1,276,889.40. (PI Ex 7.)
 

 At the trial, Mr. Virgil Kuhn, who was the regional controller for plaintiff from January 1, 1970, to April 1,1977, testified that, although it was his responsibility timely to file for the plaintiff both the personal property return and the free port exemption claim, forms for which were annually mailed to plaintiffs office by the assessor, the actual filing was made by his assistant controller. Because of the illness of the
 
 *[164]
 
 assistant controller, resulting in his hospitalization during the filing period, and because of an extensive audit of plaintiff’s business books and records occasioned by a pending corporate merger, the controller assigned the filing of the forms to office personnel, who, according to his testimony, indavertently failed to effect the filings. The controller received the form notice of May 1, 1974, which set forth the assessed value of inventory as $534,710. The controller testified that he assumed the assessed value was determined after the assessor’s office made an allowance for the free port exemption, although he further testified that he was familiar with the deadline for filing the free port exemption claim and that he knew the deadline had passed without a filing. He further swore that it did not enter his mind to consider at the time he received the notice of May 1, 1974, whether the assessor had authority to grant a free port exemption. He also testified at the time of the trial that he did not know whether the assessor would have such authority.
 

 Mr. Kuhn stated that he signed and approved the May 1, 1974, assessment form for the following basic reasons:
 

 (1) He assumed that the $534,710 figure represented the assessed value of total inventory less inventory eligible for the free port exemption and he further assumed that the assessor had, in fact, considered and allowed the free port exemption in making the assessment;
 

 (2) He found the figure of $534,710 to be reasonable when he compared it with the inventory on the company books and when he took into consideration that approximately 65 percent of such inventory would be subject to exemption as free port merchandise, based on free port exemptions for prior years of which he was aware; and
 

 (3) The peremptory tone and the terms of the May 1, 1974, notice led him to conclude that unless he
 
 *[165]
 
 immediately approved the assessment with the signature of the plaintiff, the tax collector would forthwith proceed to collect the tax based on the assessment; and if he did sign and approve it, the tax would be due and payable several months later in the normal course of assessment and taxation procedures. Mr. Kuhn believed that signing the form notice and paying the tax completed the tax proceedings for the year 1974 and thus he did not consider any subsequent filing of a 1974 personal property tax return or the filing of a free port exemption claim form.
 

 Mr. Thomas Stupfel, the successor to Mr. Kuhn, was the regional controller of plaintiff from April 1977 to January 1979. Mr. Stupfel testified that in the spring of 1977 a routine county audit was performed that eventuated in the notice of intent to assess omitted property under date of May 12,1977. (PI Ex 3.) Mr. Stupfel stated that he ascertained after May 12, 1977, from the books and records of plaintiff, that its inventory as of January 1, 1974, should have had an assessed value of $2,541,897.11, that the amount of the free port exemption for that year should have been in the assessed value of $1,441,939.46, and that the difference between these two figures, namely, $1,099,957.65, should have been the amount correctly assessed as inventory subject to taxation for the year 1974 after allowance and deduction of the free port exemption. Based on these calculations, which were supported by computations set forth in Plaintiffs Exhibits 4, 5, and 6, he concluded that the amount of property tax properly payable for 1974 should have been in the amount of $39,465.11 (of which plaintiff, by the assessment made on May 1, 1974, had paid $33,966.63), instead of the amount of $67,434.47 which resulted from the omitted property assessment. Mr. Stupfel further testified that he would have followed the procedure of Mr. Kuhn and not made a calculation upon receiving the assessor’s May 1,1974, notice, because, among other reasons, the assessment set out would have seemed reasonable after taking the
 
 *[166]
 
 free port exemption into account and because any error in the assessment made under that notice would have been rectified by routine audits made every three years by the county.
 

 The remaining witness, Mr. Robert W. McBride, chief personal property appraiser for the assessor’s office, testified that if a personal property tax return was not filed by a taxpayer, the assessor, pursuant to his statutory duty under ORS 308.290(4), listed and evaluated the personal property from the best information obtainable from other sources. That information was deemed to be contained in a field book, which set forth the assessed value of property of every taxpayer for the prior year. In the case of the plaintiff, the field book valuation for 1973, plus an arbitrarily selected addition of 10 percent, constituted the assessed value of $534,710 fixed in the assessor’s notice of May 1, 1974. Mr. McBride acknowledged that, although the field book valuation was arrived at
 
 after
 
 deducting the free port exemption from the total assessed value of plaintiffs inventory, no notation was made in the book to that effect. He further acknowledged that if an assessment was canceled under Oregon statutes, cancellation was noted in the field book. Further relevant statements by Mr. McBride were elicited to the effect that the assessed value amount of exempted free port inventory for each taxpayer was kept in the assessor’s card files under the classification of free port exemptions, and that there were also kept, as records of the assessor’s office, the prior personal property assessment returns for each taxpayer which, on their face, show for each year the total assessed value of inventories at the assessment date, the assessed value of any property eligible for free port exemption for such year, and the difference between the two values which the return states is the personal property subject to assessment. Additionally, he testified that there were approximately 25,000 personal property accounts in 1974 and that approximately 3,000 to 4,000 of the accounts failed to file
 
 *[167]
 
 returns. It was thus necessary for the assessor to estimate the assessed value of each of these accounts and to send out notices of assessed value to each account based on the best information the office had. These notices are all of like kind to the assessor’s notice of May 1, 1974, sent to the plaintiff.
 

 Based on the foregoing evidence, which was either admitted or substantially uncontradicted, plaintiff contends that either the assessor should be estopped from adding the alleged omitted property to the tax rolls because the assessor’s conduct lulled plaintiff into believing that the assessed value of the May 1, 1974, notice was correct or, in the alternative, that plaintiff should be allowed to apply for a recommendation striking the alleged omitted property from the tax rolls on the ground of hardship under ORS 307.475.
 

 Since the filing deadline for a free port exemption claim and for application for a hardship determination had passed without such filing or application, the plaintiff can prevail on one contention or the other only if the conduct of the county assessor should estop him from asserting such deadlines in opposition to plaintiffs claim. This issue will now be considered.
 

 The legal principle of estoppel, applicable to the issue presented, has been evolved in relatively simple terms by the Oregon Supreme Court and by this court. In
 
 Johnson v. Tax Commission,
 
 248 Or 460, 435 P2d 302 (1967), the county assessor had mailed forms for the 1966-1967 tax year to the plaintiff therein, supplying certain information which by statute was required to be filed with the assessor’s office on or before May 15, 1966, in order to cancel personal property assessments on automobiles in the possession of car dealers as of January 1,1966. Prior to the year in question, the relevant statute had permitted filing as late as June 6 of each year. The plaintiff received three forms from the assessor’s office, one of which incorrectly set forth the prior filing date of June 6, although the other two forms correctly set forth the new May 15 date. Plaintiff relied on the erroneous date and filed his claim
 
 *[168]
 
 after May 15. The assessor denied cancellation. The Supreme Court held that the assessor was estopped to deny the cancellation, and in the course of its opinion stated the following (248 Or at 463-464, 435 P2d at 304):
 

 «* * * Thg policy of efficient and effective tax collection makes the doctrine [of estoppel] of rare application. It could only be applied when there is proof positive that the collector has misinformed the individual taxpayer and the taxpayer has a particularly valid reason for relying on the misinformation and that it would be inequitable to a high degree to compel the taxpayer to conform to the true requirement. * * *”
 

 In
 
 Pilgrim Turkey Packers v. Dept. of Rev.,
 
 261 Or 305, 493 P2d 1372 (1972), the Supreme Court estopped the assessor from’ denying a processor’s exemption to the plaintiff, which had filed its exemption claim with the assessor after the statutory deadline, on the basis that the exemption claim form prepared by the State Tax Commission (now Department of Revenue) was ambiguous in its instructions concerning the date when, and the place where, the form was to be filed. In reaching its decision, the court specifically held (261 Or at 310, 493 P2d at 1374):
 

 "The ambiguous nature of the form and the instructions were enough to mislead a reasonable person. * * *”
 

 In
 
 Cascade Manor, Inc. et al v. Dept. of Rev., 5
 
 OTR 482 (1974), the assessor voluntarily supplied exemption forms to the plaintiffs in two consecutive years and the plaintiffs timely filed the forms and obtained property tax exemptions. In the third year, the assessor’s office, through oversight, did not mail the form and the plaintiffs filed the form after the statutory deadline had passed. The assessor denied the exemption for that year. Although the assessor’s office had no duly to send out such forms, the court estopped the assessor from denying the exemption on the ground that the plaintiffs had come to rely upon the procedure followed by the assessor in the first two years and that the plaintiffs reasonably relied thereon. In the course of its opinion, this court determined,
 
 *[169]
 
 based upon its interpretation of Oregon Supreme Court rulings, that only the three following elements are necessary to establish "quasi estoppel”: (1) that there must be misleading conduct on the part of an official; (2) that there must be reliance in good faith upon the conduct of the party estopped; and (3) that there must be injury to the party claiming estoppel.
 

 In
 
 Hinson v. Dept. of Rev.,
 
 7 OTR 397 (1978), the assessor continued to deal with the plaintiffs representatives, who were an attorney and certified public accountant, relative to the removal by the assessor of a special farm use assessment, even though the time for an appeal by the plaintiff to the Department of Revenue from the assessor’s removal action had lapsed. The court held that, under the facts of the case, the assessor was estopped from claiming that the plaintiff failed to appeal within the statutory time and further held that the department had jurisdiction to consider the issue of removal of the farm use classification. The basis of the court’s opinion was expressed as follows (7 OTR at 405):
 

 "* * * It is improper for the assessor to lead a taxpayer to believe, as in this case, that further dealings with the assessor, rather than an appeal to the Department of Revenue, can alter the assessor’s action. When the assessor does mislead a taxpayer, the assessor will be estopped from claiming that the taxpayer failed to appeal within the statutory six-month period. * * *”
 

 The doctrine of estoppel enunciated in the foregoing cases may be summarized as follows:
 

 If an official engages in misleading conduct, whether that conduct is manifested by an erroneous factual representation or by a course of dealing or conduct which reasonably but erroneously implies to the taxpayer that he need not pursue certain processes in order to safeguard his legal rights, and if the taxpayer is injured because he does not in good faith pursue those processes as a result of relying on such erroneous factual representation or course of conduct or dealing, the official will be estopped from claiming
 
 *[170]
 
 that the taxpayer cannot avail himself of those processes.
 

 With reference to the facts in the case at bar, it is the view of the court that the assessor’s office did engage in misleading conduct when it stated in its notice of May 1, 1974, that the assessed value of merchandise was fixed at $534,710. That figure
 
 in fact
 
 represented the residual assessed value of merchandise for the prior year of 1973, plus a 10 percent addition thereto,
 
 after
 
 the deduction of $993,308 as exempted free port inventory from the gross total value of plaintiffs 1973 inventory evaluation.
 

 The defendant is now in the posture of urging that the value of $534,710 was not only intended as a total inventory valuation, without any free port deduction, but should have been recognized as such by the plaintiff. The court does not agree. For a period of three years preceding 1974, extensive free port exemptions, ranging up to approximately $1,000,000 in the year 1973, had been claimed and granted and, in the same time period, the residual property assessments for which plaintiff was liable, after the deduction of the value of the free port inventory, ranged from a low of $486,100 in 1973 to a high of $521,225 in 1972. In the context of this past assessment experience, the controller of plaintiff, who had been employed from the year 1970 and thus was aware of the past assessments and free port exemptions, could scarcely have concluded that the value of $534,710 set forth in the May 1, 1974, notice did not take into account a free port valuation deduction. Indeed, the controller did testify that the value seemed reasonable, taking into account the free port exemptions allowed in prior years together with valuations on the company’s current inventory records. Although the notice of May 1, 1974, on its face, was not ambiguous, it was manifestly misleading when considered in the ambience of the prior three-year assessment relationship between the assessor’s office and the plaintiff.
 

 
 *[171]
 
 The defendant, however, objects to a conclusion of estoppel in this case primarily on the basis of the case of
 
 Johnson v. Tax Commission, supra.
 
 The
 
 Johnson
 
 case stated that the policy of efficient and effective tax collection makes the doctrine (of estoppel) of rare application. However, the Oregon Supreme Court, after pronouncing that dictum, immediately stated that the doctrine of estoppel can be applied in those cases where there is proof positive that the assessor has misinformed the taxpayer, that the taxpayer has a particularly valid reason to rely on the information, and that it would be inequitable to compel the taxpayer to conform to the true requirement. Stated otherwise, it appears that the Supreme Court is only stating that estoppel situations are rare, but that the estoppel doctrine must be applied when it exists and is proved. This court cannot fault that conclusion.
 

 However, even if the
 
 Johnson
 
 case can be construed to mean that if an estoppel exists, it should rarely be judicially applied in order that efficient and effective tax collection not be impeded, this court does not agree that invoking the doctrine in this case impedes the efficiency of the tax collection process. It is true, as the defendant observes, that testimony by Mr. McBride states that 3,000 to 4,000 personal property tax accounts do not file returns and thus the assessor’s office must list and evaluate the property from the best information available from other sources pursuant to ORS 308.290(4). However, under the facts before the court in this case, it is abundantly clear that the assessor’s office readily could have informed itself that the value set forth in the May 1, 1974, letter in fact was the residual value of the preceding year plus 10 percent thereof, after allowance and deduction of a free port exemption. That information was available on the 1973 personal property return of plaintiff, which on its face showed the existence and the amount of the free port exemption for that year, and the information of a free port exemption for 1973 was also
 
 *[172]
 
 available in the assessor’s card files under the classification of free port exemptions. This information was available to the assessor in his own office. If this investigation should prove too cumbersome to the assessor, and if the premise should be adopted that the assessor should not be required to look beyond the field book of assessed values he compiles, no reason appears why the field book assessment entry cannot note that a taxpayer was granted a free port exemption; indeed, Mr. McBride testified that the field book does contain notations of cancellation of assessments, which are functionally indistinguishable from exemptions. As an example of the procedure and effect of a cancellation of assessment,
 
 see
 
 OKS 308.250 relating to certain farm products.
 

 The defendant further objects that an estoppel arising from the facts as set forth in the May 1,1974, notice would impose on the assessor the burden of making a correct assessment when the plaintiff has failed to file a return and, therefore, has not supplied any assessment information at all. However, ORS 308.290(4) contemplates that a taxpayer may fail to file a return and, in this circumstance, imposes the duty on the assessor of listing and evaluating the property from the best information obtainable from other sources. Having been charged with this duty, the assessor cannot shirk it on the ground of plaintiffs failure to file a return, which was the operative fact giving rise to the very duty of which defendant complains. The assessor did not evaluate the property from the best available sources, as this opinion above points out, sources which were available in his own office records.
 

 The plaintiff, as the defendant asserts, could have calculated its correct assessment after receiving the notice of May 1,1974, but believing the assessment to be reasonable and to include a free port exemption, it did not do so and awaited the subsequent routine county audit to eliminate any discrepancies. The court cannot conclude, under all the facts and circumstances
 
 *[173]
 
 of this case, that the plaintiffs conduct in this regard is inconsistent with, or detracts from, its good faith reliance on the assessor’s May 1, 1974, valuation.
 

 It is also true, as the defendant urges, that the plaintiffs controller knew that a free port exemption claim had not been filed. However, the assessment in the form notice of May 1, 1974, led the controller reasonably to believe that the assessor nevertheless considered the exemption for the reasons above stated in this opinion. It is no more permissible for the assessor to mislead the plaintiff concerning an apparent grant of an exemption than it was for the assessor to mislead the taxpayer in the
 
 Hinson
 
 case,
 
 supra,
 
 to believe that further dealings with the assessor could alter the assessor’s action when, in fact, the assessor’s authority had legally terminated. In the
 
 Hinson
 
 case, this court, because of the assessor’s conduct, invoked the doctrine of estoppel and allowed the Department of Revenue to assume jurisdiction of the taxpayer’s case although the statutory time for an appeal to the department had expired. Similarly, in this case, because of the assessor’s conduct, the doctrine of estoppel should be invoked and the right by the plaintiff to apply for hardship application should be granted even though the time for such application has expired. Injury to the plaintiff, if it had to comply with the omitted property assessment, which leads to a property tax approximately $28,000 higher than it contends it ought to pay, is clear.
 

 The facts of this case satisfy the doctrine of estoppel as defined by the Oregon courts. There was a misleading representation by the assessor on which the plaintiff reasonably relied, and the plaintiff may be substantially injured unless an estoppel is invoked.
 

 The assessor, a party to the proceeding before the defendant which resulted in defendant’s Order No. VL 78-75, will be estopped from claiming that the plaintiff failed to apply for hardship relief within the statutory period allowable under ORS 307.475 and the plaintiff
 
 *[174]
 
 shall have the right to apply for such relief, in this instance, if it so desires. Plaintiff shall file such application with the Department of Revenue within 30 days after judgment is entered in this case.
 

 It is relevant to note that this court neither expresses nor has any jurisdiction to express an opinion on whether plaintiffs hardship application, if plaintiff sees fit to make one, should or should not be given a favorable recommendation under ORS 307.475. That decision can only be rendered by the appropriate authorities within the terms of ORS 307.475. The court holds merely that the department may consider the appeal without reference to the December 15, 1974, limitation because of the carryover of the estoppel theory as appears to this court to be required.
 

 The court also notes that the plaintiff is not entitled to invoke the doctrine of estoppel to correct the consequences of its failure to file the free port exemption claim on April 1, 1974. It is not chronologically possible for the plaintiff to have relied on the notice of May 1, 1974, in failing to file an exemption claim,on April 1, 1974.
 

 Plaintiff is entitled to its statutory costs and disbursements in this court.
 

 *
 

 Throughout this opinion, "the year 1974” refers to the assessment date of January 1,1974, and the tax year 1974-1975.
 
 See McCoy v. Dept. of Rev.,
 
 6 OTR 116 (1975),
 
 aff'd,
 
 274 Or 165, 545 P2d 116 (1976).