DECISION
Plaintiff[1] appeals Defendant's Notices of Deficiency Assessment, dated September 25, 2007, for tax years 2002, 2003, and 2004. The parties submitted the matter to the court on cross-motions for summary judgment. Oral argument was held on February 16, 2010.
On June 23, 2010, Plaintiff filed a Motion to Supplement the Record, requesting oral argument. Oral argument was held May 10, 2011. In their pleadings and at oral argument, the parties agreed that "a letter from Nancy Gwin to Paul Guthrie dated October 22, 1999" should be admitted by the court without objection. (Def's Resp to Ptfs' Mot to Supplement the Record, at 1.) Defendant objected to Plaintiff's "argument beginning on page 5 of Plaintiffs' Motion to Supplement the Record, on the grounds that it constitutes an attempt to reargue the primary legal issue in this case and has no relevance to the plaintiffs' actual request to supplement the record with the Gwin Letter." (Id. at 2.) *Page 2 
 I. STATEMENT OF FACTS
The parties filed their First Stipulation of Facts (Stip Facts) on April 30, 2009. They agreed to the following facts.
"SFG [Plaintiff] is a corporation in good standing duly incorporated under the laws of the State of Oregon, and is the parent corporation of an affiliated group that filed a federal consolidated income tax return, on a calendar-year basis [for 2002, 2003, and 2004]. The affiliated group was engaged in a single unitary business that consisted of providing insurance services and asset management services." (Stip Facts at 2, ¶ 2.)
"Standard Insurance Company (`SIC') is one of the members of the SFG federal affiliated group. SIC is an insurance company incorporated under the laws of the State of Oregon and is an `insurer' within the meaning of ORS 317.650 to 317.665. SIC became a wholly-owned subsidiary of SFG in 1999, and remained so throughout the years at issue. SIC does business in various states, including Oregon, and used the apportionment factors described in ORS 317.660 in determining its Oregon taxable income." (Id. at 2, ¶ 3.)
The Standard Life Insurance Company of New York (`SNY') is an insurance company incorporated under the laws of the State of New York and is an `insurer' within the meaning of ORS 317.650 to 317.665. SNY is a wholly-owned subsidiary of SFG. Although SNY writes insurance contracts only in New York and is taxable in New York, it also is subject to tax in Oregon and, during [2002, 2003, and 2004], used the apportionment factors described in ORS 317.660 in determining its Oregon taxable income." (Id. at 2, ¶ 4.)
"SFG and its subsidiaries other than SIC and SNY are not `insurers' for purposes of ORS 317.650 to 317.665. SFG and the non-insurer subsidiaries (with SFG, the `Non-Insurance Group') filed a single Oregon consolidated corporation excise tax return for [2002, 2003, and *Page 3 
2004]. Members of the Non-Insurance Group did business in various states, including Oregon, and the Non-Insurance Group used the apportionment factors described in ORS 314.650 to 314.665 in determining its Oregon taxable income." (Id. at 2-3, ¶ 5.)
"Although SIC and SNY were in a unitary business with the Non-Insurance Group, SIC filed a separate Oregon corporation excise tax return * * * pursuant to ORS 317.710(5)(b)." (Id. at 3, ¶ 6.) "SIC paid dividends to SFG (the "Dividends") as follows:
 2002 $50,000,000
 2003 $65,000,000
 2004 $0."
(Id. at 3, ¶ 8.) "In its federal consolidated returns for [2002, 2003, and 2004], SFG treated the Dividends as intercompany distributions, which were subject to the intercompany elimination rules. SFG did not include the Dividends as items of income * * *." (Id. at 3, ¶ 9.) In filing its Oregon consolidated returns on behalf of itself and the rest of the Non-Insurance group, SFG reported the Dividends as an elimination under the federal consolidated return rules. SFG's Oregon consolidated group return did not "include or reflect the Dividends received as income from outside the Oregon consolidated return group." (Id. at 3-4, ¶ 10.)
On September 28, 2006, Defendant issued notices of deficiency to SFG for 2002, 2003, and 2004. "The effect of the Department's adjustments was to add back the Dividends, but allow an 80 [percent] deduction of the Dividends. The adjustments increased SFG's Oregon taxable income for [2002, 2003, and 2004]. Although SIC did not pay a dividend to SFG for 2004, the adjustments caused a deficiency for 2004 because they reduced an operating loss carryover to 2004." (Id. at 4, ¶ 11.) *Page 4 
In its Motion for Summary Judgment, Plaintiff seeks alternative relief, stating that if the court concludes that the dividends are taxable income to Plaintiff, Defendant's interest and penalties assessment should be waived, citing ORS 305.880. (Ptfs' Mot for Summ J at 15.) Defendant's employee, Paul J. Guthrie (Guthrie), senior tax auditor, Corporation/Estate Section, Business Division, and Plaintiff's employee, Nancy Gwin (Gwin), tax manager, Standard Insurance Company, exchanged four letters discussing how dividends paid by SIC to SFG should be taxed in Oregon. In Guthrie's reply dated September 15, 1999, Guthrie summarized and responded to three questions in Gwin's first letter addressed to Leonard Hamilton and dated September 1, 1999. Guthrie summarized Gwin's first question:
 "Are [SFG] and its subsidiary [SIC] unitary under ORS 317.705, even though they are not permitted to file an Oregon consolidated return?"
(Ptf's Ex 1.) Guthrie responded, stating:
 "The information provided indicates that SFG is probably unitary with [SIC]. There is a common executive force * * *. There are centralized administrative services or functions resulting in economies of scale and a flow of goods, capital resources or services demonstrating functional integration * * *."
(Id.) Next Guthrie summarized Gwin's second question:
 "Are dividends received by SFG from [SIC] eliminated from SFG's Oregon excise tax return under ORS 317.715?"
(Id.) Guthrie responded:
 "No. Intercompany dividends are eliminated for federal purposes because both the payee (SFG) and the payer ([SIC]) are included in the affiliated group filing the consolidated federal return. [SIC] is not part of the consolidated Oregon return filed by SFG and the deduction provided under IRC 243(a)(3) no longer applies to the dividends. However, ORS 317.267 does provide for an 80% dividend deduction on dividends received from a 20% (or more) owned corporation."
(Id.) Guthrie's letter then addresses Gwin's third question:
 "Alternatively, is there a consolidation method under which SFG and [SIC] can file a consolidated tax return (as it does under federal law)?" *Page 5 
(Id.) Guthrie responded:
 "No. ORS 317.710(5)(b) provides that if any corporation is permitted or required to use different apportionment factors than a corporation with which it is affiliated, the corporation shall not be included in a consolidated state return."
(Id.)
Gwin responded to Guthrie's letter in October 1999, asking for a clarification of "Oregon law:"
 "SIC and SFG will file a consolidated federal return. Dividends distributed from SIC to SFG will be eliminated in the federal consolidation process[.]
 *****
 "The Oregon taxable income of SFG will be its federal taxable income, with the alterations required by Chapter 317 (ORS 317.010(10), ORS 317.715(1)). Dividends from SIC to SFG would not be included in SFG's federal taxable income, as noted above. Question 1: Does Oregon law require the eliminated dividends to be added back?
 "ORS 317.267(1) requires dividends eliminated under federal consolidation rules to be added back if the dividends `are paid by members of an affiliated group that are eliminated from a consolidated federal return pursuant to ORS 317.715(2).' Question 2: Are the dividends eliminated from SFG's federal return pursuant to ORS 317.715(2)?"
(Ptfs' Ex 12 at 1. (Emphasis in original.))
Guthrie responded to Gwin in a letter dated March 14, 2000. Guthrie summarized Gwin's second letter:
 "[Y]ou asked me if dividends, received by a parent financial corporation from its unitary subsidiary insurance corporation and eliminated from federal consolidated taxable income, must be added back to compute Oregon taxable income.
 "The answer is no."
(Ptfs' Ex 2.) (Emphasis in original.) Guthrie explained:
 "ORS 317.267, paragraph [(]1) requires an add back if the dividends are received from members of the federal consolidated return that are eliminated from the Oregon consolidated return pursuant to ORS 317.715(2). ORS 317.715, paragraph (2) provides that members of the federal consolidated return are *Page 6 
eliminated from the Oregon consolidated return pursuant to ORS 317.715(2) if they are not unitary with the Oregon taxpayer."
 "If Standard Insurance Company is unitary with its parent, [its] removal from the Oregon unitary group is required by ORS 317.710(5)(b) because an insurance company has a different apportionment formula from the standard apportionment formula."
(Id.)
 II. ISSUES
Plaintiff alleges that the dividend income is not includable in Oregon taxable income because the dividend was paid to an affiliated subsidiary and is eliminated as an intercompany dividend under the federal consolidated return rules. (Ptfs' Mot for Summ J at 8.) Plaintiff states that Oregon provides that the federal consolidated return income is the beginning point in Oregon, and Oregon has not provided for an "addback" for that intercompany dividend payment, which is not included in the federal consolidated return. (Id. at 6-8.) Plaintiff alleges that if the Oregon Legislature had intended to require an addback of Plaintiff's dividend income, it could have done so. (Id. at 8-10.) Plaintiff states that Oregon specifically provides an addback for dividends in other situations, but did not do so in this case. (Id. at 8 n 8 (citing ORS 310.630(8)(P); ORS 316.372(2); ORS 316.680; ORS 317.309, none of which are applicable here).)
Defendant alleges that Plaintiff improperly applied the federal intercompany transaction rules for Oregon because "the scope of those rules for Oregon corporation excise tax purposes must be limited to members within the Oregon consolidated group." (Def's Cross Mot for Summ J and Response to Ptfs' Mot for Summ J (Def's Cross Mot for Summ J) at 4 (emphasis in original).) Defendant alleges that the federal consolidated return intercompany transaction rules do not apply when the transaction is "between a member of the Oregon consolidated group and a non-member." (Id. at 4.) Defendant concluded that the dividends are income that must be *Page 7 
included in the Oregon consolidated group's income as the starting point. (Id. at 5.) Because the dividend income is included at the starting point, Defendant states that no addback provision is necessary. (Id.) Defendant concluded that the dividend income qualifies for the 80 percent dividends received deduction under ORS 317.267(2)(b) and does not qualify as an intercompany transaction that can be eliminated. (Id. at 4.)
The second issue before the court is Plaintiff's request that the court waive assessed interest and penalties because Plaintiff was misled by Defendant's representative.
 II. ANALYSIS
A. Dividends
In many cases, an affiliated group that files a federal consolidated return would also file a consolidated return for Oregon income tax purposes. ORS 317.710(5)(a).[2] In such cases, the intercompany transactions "would produce no net tax consequences, as income to a receiving member would be offset by a deduction to the related paying member." PacifiCare Health Systems Inc. v. Dept. ofRev. (PacifiCare), 19 OTR 460, 462, WL 2596371 (July 1, 2008) (holding that income and corresponding deductions for affiliated corporations filing separate Oregon returns would be ignored where the parent, notwithstanding the form of the transaction, was the equitable owner of the income-producing property). However, entities that engage in the insurance business must file separate Oregon returns under ORS 317.710(5)(b), even if those entities are a member of an affiliated group. ORS 317.710(5) provides, in pertinent part:
 "(a) If two or more corporations subject to taxation under this chapter are members of the same affiliated group making a consolidated federal return and are members of the same unitary group, they shall file a consolidated state return. The Department of Revenue shall prescribe by rule the method by which a consolidated state return shall be filed. *Page 8 
 "(b) If any corporation that is a member of an affiliated group is permitted or required to determine its Oregon taxable income on a separate basis under ORS 314.670, or if any corporation is permitted or required by statute or rule to use different apportionment factors than a corporation with which it is affiliated, the corporation shall not be included in a consolidated state return under paragraph (a) of this section.
 "(c) Whenever two or more corporations are required to file a consolidated state return under paragraph (a) of this subsection, any reference in this chapter to a corporation for purposes of deriving Oregon taxable income shall be treated as a reference to all corporations that are included in the consolidated state return."
Subsection (a) requires an Oregon consolidated return where a federal consolidated return was filed by members of a unitary group. ORS 317.710(5)(a). Subsection (b) provides the relevant exception that requires an insurer to file a separate Oregon return and not be included in a consolidated state return even if that entity was included in a federal consolidated return. ORS 317.710(5)(b). Subsection (c) describes the relevant terminology in differentiating the treatment of those members of the affiliated group that must file separately. ORS 317.710(5)(c). Subsection (c) states that a reference to "a corporation" in ORS chapter 317 means corporations included in the Oregon consolidated return.Id.
1. Beginning Point
Plaintiff alleges that the dividend income is eliminated as an intercompany transaction in the Oregon consolidated return as it is in the federal consolidated return because the beginning point of the Oregon consolidated return is the federal consolidated return under ORS 317.715(1). (Ptfs' Mot for Summ J at 7-8.) Defendant, on the other hand, alleges that the beginning point in ORS 317.715(1) is the federal consolidated income tax return for each taxpayer filing a separate Oregon consolidated return, including the reversal of any intercompany transactions as if the taxpayers did not file a federal consolidated tax return. (Def s Mot for Summ J at 4-5.) The issue then becomes, under chapter 317, whether the separation required under ORS 317.710(5)(b) requires the Oregon consolidated return to reverse the elimination of *Page 9 
intercompany transactions in the federal consolidated return to begin the determination of Oregon taxable income under ORS 317.715(1).
The treatment of affiliated groups filing a consolidated return in Oregon is governed by ORS 317.715, which provides, in pertinent part:
 "(1) If a corporation required to make a return under this chapter is a member of an affiliated group of corporations making a consolidated federal return under sections 1501 to 1505 of the Internal Revenue Code, the corporation's Oregon taxable income shall be determined beginning with the federal consolidated taxable income of the affiliated group as provided in this section."
ORS 317.715(1) was discussed in Dept. of Rev. v. PennIndependent Corp. (Penn Independent), 15 OTR 68 (1999). "Penn was a Pennsylvania corporation commercially domiciled in that state. Three of Penn's subsidiaries conducted business in Oregon," one of which was Penn-America, a foreign insurance company.Penn Independent, 15 OTR at 69-70. "Penn filed a federal consolidated income tax return including all three subsidiaries[,]" but "excluded Penn-America's expenses and income from the determination of Oregon taxable income" because it was "a foreign insurance company exempt from excise tax imposed by ORS chapter 317." Id. The department disagreed with that exclusion and issued two notices of assessment. Id. at 70. The court summarized the issue as follows:
 "If two or more corporations doing business interstate file a consolidated federal tax return, then must their Oregon unitary income include the income of a foreign insurance (financial) corporation that is part of the unitary group but is not subject to Oregon's excise tax?"
Id.
The court explained that: a "[F]or-profit corporations doing business in Oregon are subject to an excise tax measured by income."Id. at 71 (citing ORS 317.018(3). "[I]f there are sufficient ties * * * between the corporations, then they are considered a single business or unitary group." Penn Independent,15 OTR at 71. If a member of a unitary group does business *Page 10 
in Oregon, "then the unitary character provides the basis for Oregon to tax a portion of the entire unitary group's income."Id. (citation omitted). The beginning point for determining taxable income of such a corporation is the federal consolidated taxable income of the affiliated group under ORS 317.715(1). The beginning point, the federal consolidated taxable income, is not limited to corporations filing consolidated state returns.Id. at 73. While financial corporations are excluded from Oregon consolidated tax returns under ORS 317.710(5)(b), those financial corporations are not excluded from the measure of income under ORS 317.715(1). Id. at 73-75. The legislature manifested an intent to include unitary income of financial corporations as evidenced in ORS 317.715(3)(b), by referring to ORS 314.280, which addresses the tax treatment of financial organizations.Id. at 74-75. Therefore, while Penn-America was exempt from Oregon excise tax, its income was included for purposes of determining the income of a non-exempt member of that unitary group in Oregon. Id. at 75. The court held:
 "[A] foreign insurance company * * * is exempt from Oregon's corporate excise tax. Consequently, it is not required to file an excise tax return, either singly or consolidated. However, if [a foreign insurance company] is a member of a unitary group filing a consolidated federal tax return, and a member of that unitary group is subject to excise tax in Oregon, then that member must include [the foreign insurance company's] income as part of the unitary income."
Id.
 Penn Independent held that the beginning point for the Oregon consolidated return is the federal consolidated return under ORS 317.715(1). Id. at 73. Penn Independent held that the income of an exempt foreign insurance company that is part of a unitary group is included as part of the unitary income of the group filing an Oregon consolidated return. Id. at 75. The holding inPenn Independent turns on the fact that the foreign insurance company was exempt from filing an Oregon return. The holding inPenn Independent is not dispositive in the case before the court because the insurance company, SIC, is subject to tax in Oregon, and must file *Page 11 
its own separate Oregon tax return. The case here involves two companies in a unitary group that are each subject to tax in Oregon.Penn Independent does not determine the treatment of intercompany transactions between unitary members of an affiliated group that must file separate Oregon returns.
In PacifiCare, the court held that income and corresponding deductions for affiliated corporations filing separate Oregon returns would be ignored where the parent, despite the form of the transaction, was the equitable owner of the income-producing property. 19 OTR at 479-80. In that case, plaintiffs filed a federal consolidated return, but could not file a consolidated Oregon return because of the insurer status of some members of the affiliated group under ORS 317.710(7). Id. at 462. The court noted that, normally, an affiliated group that files a federal consolidated return will file an Oregon consolidated return and, as such, the transactions at issue would create no tax consequences. Because the companies could not file a consolidated Oregon return, "intercompany transactions were not offset and were separately recorded."Id.
Because of the insurer status of SIC under Oregon law, SIC and SFG could not file a consolidated Oregon return even though the entities had filed a federal consolidated return. Although the transactions at issue in PacifiCare differ to the extent that they involved royalties and licensing, the result is the same. The transactions that otherwise would permit no net tax consequences in regards to a consolidated Oregon return, cannot be offset when the companies must file separate Oregon returns.
Rather than the beginning point of ORS 317.715(1), the separation of the insurer from the non-insurance group begins with ORS 317.710(5)(b). Once it is determined if members of a unitary group may file an Oregon consolidated return under ORS 317.710, the evaluation of that income is governed by ORS 317.715(1) as the beginning point. Before that beginning point may *Page 12 
be reached, the unitary members are separated under ORS 317.710(5)(b) and may not claim the benefits of having no net tax consequences for intercompany transactions because, under Oregon law, those members cannot file a consolidated return. A company cannot claim the benefits of a consolidated Oregon return where the legislature has required that it file a separate Oregon return. As in PacifiCare, the intercompany transactions cannot be eliminated and must be separately recorded for the Oregon consolidated return.
2. Legislative History
In interpreting statutory text, the court must "pursue the intention of the legislature if possible." ORS 174.020(1)(a). Oregon courts consider the text and context of the statute, giving words of common usage their "plain, natural, and ordinary meaning."Portland General Electric Company v. Bureau of Labor andIndustries (PGE), 317 Or 606, 610-11, 859 P2d 1143 (1993). Courts also consider the legislative history of the statute, limiting its consideration of legislative history to materials proffered by the parties and assigning legislative history whatever weight the court concludes is appropriate. State v. Gaines
(Gaines), 346 Or 160, 169-71, 206 P3d 1042 (2009).
The statute at issue here, ORS 317.710, was included in House Bill 3029 during the 1984 special session, and was amended in 1985. (Ptf's Ex 9 at 1.[3]); Or Laws 1984, c 1, § 2; Or Laws 1985, c 802, § 29. House Bill 3029 "prospectively took Oregon off of using worldwide combined reporting for determining tax liability for corporations that were doing business in interstate and international commerce." (Ptf's Ex 9 at 1.) Many of the 1985 amendments were intended to clarify House Bill 3029.Id. ("[T]he bill was drafted in kind of a hurry and having *Page 13 
had the opportunity to review provisions, the amendments on page 5, * * * line 8 on are a further attempt to make clear the requirements of that law * * *.").
Defendant argues that the legislative history from the 1984 record is applicable because it shows a general intent of the legislature that "federal consolidated return regulations do not apply to transactions between a member of an Oregon consolidated group and a nonmember that is required to file a separate return." (Def s Cross Mot at 12.) At the February 16, 2010, oral argument, Defendant argued that the legislative history from 1984 is still relevant because the 1985 amendments are not applicable here.[4]
Plaintiff on the other hand, argues that the 1984 legislative history is nullified by the 1985 amendments and that the 1985 legislative history does not address the issue. (Ptfs' Resp at 12.)
The parties agree that the 1984 legislative history supports Defendant's position. (Ptfs' Resp at 12; Def s Cross-Mot at 11-12.) The parties disagree as to whether that legislative history is applicable given the 1985 amendments. (Id) In reviewing the legislative history of ORS 317.710, the 1985 legislative history suggests that the intent of the 1984 provisions continued to apply to the 1985 version, and the 1985 legislative history specifically addresses the intent of the legislature regarding the benefits of filing a consolidated state return in Oregon. In discussing the 1985 amendments, Stockdale, attorney in charge of the Tax Section of the Department of Justice, stated:
 "In line 13, * * * again just trying to clarify the requirement that if a corporation is subject to taxation under ORS Chapter 317 and is a member of an affiliated group, which is related by ownership only, it has to be part of the same, unitary group is another Oregon reporting corporation in order for a consolidated state return to be filed. The benefits of consolidated state return are that income and losses of two corporations which are two different legal entities, are merged together and they have a single tax liability. So if one has losses and the other has *Page 14 
income, it lowers the tax liability of the pair. * * * This was a benefit that was intended under the Special Session bill. And, again, the amendments are just to try and make that language a littler clearer before we go charging into developing those returns.
(Ptf s Ex 9 at 1-2). Stockdale was not specifically discussing the amendment adding ORS 317.710(5)(b), but her statement expresses the overall intent of the legislature regarding the treatment of consolidated state returns. The 1984 special session created new rules for corporations using combined reporting. The 1985 amendments were substantially intended to clarify the meaning of the 1984 bill. Some of the amendments discussed by Stockdale were labeled as "substantive;" however, none of those changes alter the statement above, expressing an intent to limit benefits of a consolidated state return to those corporations filing a consolidated state return.
Plaintiff argues that the 1985 language is more limited and the 1984 provision was nullified by the 1985 provision that an insurer is not included in the consolidated state return. (Ptfs' Resp at 12-13.) However, as the 1985 legislative history discussed above shows, the benefits of the state consolidated return are intended to apply only to affiliated corporations that are permitted under Oregon law to file a consolidated state return. Plaintiffs argument is based upon the lack of specific language addressing this particular set of facts in the 1985 legislative history, and the subsection at issue here in ORS 317.710(5)(b). (Ptfs' Resp at 13-14.) Even though a fact specific scenario was not discussed, the overall intent of the legislature of both the 1984 and 1985 provisions was to clarify the rules regarding consolidated returns and grant the benefits of filing a state consolidated return only to those groups permitted to file a consolidated return in Oregon. The legislative history supports the text and context of the statutes at issue that the benefits of filing a consolidated Oregon return apply only to those groups permitted under Oregon law to file a consolidated state return. *Page 15 
In summary, entities that engage in the insurance business in Oregon must file separate Oregon returns under ORS 317.710(5)(b) even if an entity is a unitary member of an affiliated group that files a federal consolidated return. Intercompany transactions between an insurance company and its unitary group are not eliminated when the insurance company is excluded from the Oregon consolidated return. Intercompany transactions must be included as income in the Oregon excise tax return despite the elimination under the federal consolidated return because the separation of entities and related transactions is made pursuant to ORS 317.710(5)(b) prior to the beginning point of income determination under ORS 317.715(1).
B. Waiver of Interest and Penalties
ORS 305.880 provides for waiver of interest or penalties if an officer or employee of the department misleads a taxpayer. "A taxpayer shall have the right to waiver of interest or penalties when an officer or employee of the Department of Revenue misleads the taxpayer in a manner described in ORS 305.145." ORS 305.880. Previously in this decision, the court reviewed the applicable guidelines for interpreting statutes. See generally PGE,317 Or 606; Gaines, 346 Or 160; ORS 174.020.
ORS 305.880 uses the word "shall." "Shall" is a mandatory command.See e.g., Preble v. Dept. of Rev.,331 Or 320, 324, 14 P3d 613 (2000) (" `Shall' is a command: it is `used in laws, regulations, or directives to express what is mandatory.' Webster's Third New Int'l Dictionary, 2085 (unabridged ed 1993)."). The statutory language "shall have the right" indicates that waiver of interest or penalties is not discretionary; if Defendant misled Plaintiff as described in ORS 305.145, the interest or penalties must be waived. *Page 16 
The standard for "misleads" is provided in ORS 305.145(1).[5]
The "misleading" standard described in ORS 305.145(1) provides that a department employee must have misled the taxpayer, that the taxpayer must have relied on the misleading information, and that the taxpayer must have suffered a detriment from relying on the misleading information. The word "and" at the end of ORS 305.145(1)(b) indicates that all three subsections are mandatory, not alternative, requirements. Preble,331 Or at 325 (use of the word "and" to connect three statutory requirements "indicates that they are not alternatives.").
ORS 305.145(1)(a) states that the actor must be "an employee of the department * * * acting in an official capacity, who had knowledge of the necessary facts[.]" Guthrie, according to the signature block of his letters, was a senior tax Auditor for the Corporation/Estate Section, Business Division, of the Oregon Department of Revenue and, therefore, qualifies as "an employee of the department." ORS 305.145(1). Guthrie wrote his letters on official letterhead, indicating he was acting in an official capacity.
ORS 305.145(1)(a) also requires that the department employee "misled the taxpayer either by some erroneous factual representation or by a course of dealing or conduct[.]" This statute does not define "misled." The dictionary defines "mislead" as "to lead in a wrong direction or into a mistaken action or belief * * * [or to] deceive." Webster's Third New Int'l Dictionary
1444 (unabridged ed 2002). The text of ORS 305.145(1) provides no additional guidance for what qualifies as "misleading."
The legislative history of ORS 305.145(1) provides insight into the legislature's intent. House Bill 2601, passed in 1987, created what is now section (1) of ORS 305.145. The bill was *Page 17 
drafted with the express purpose of mirroring the language of estoppel case law, specifically Liquid Air Inc. v. Dept. ofRev.(Liquid Air), 8 OTR 159 (1979). Tape recording, House Committee on Revenue and School Finance, HB 2601, May 6, 1987, Tape 141, Side B (statement of Sue Hanna (Hanna) from the office of Legislative Counsel, referring toLiquid Air). Hanna stated that estoppel already applied to waiver of penalties and that this bill was intended to codify estoppel principles for waiver of interest. Id.
 "I've used certain words in here and they might be a bit cumbersome in some ways but I wanted to adopt the identical test that's being used for penalty so that we didn't end up with two different standards — one, the Liquid Air
test for penalty, and then another test that we dreamed up for interest."
Id. Hanna also discussed the term "misleading," describing it as when a staff member tells a taxpayer that a certain law applies but it does not apply. Id. Hanna went on to state that the bill does "not create an affirmative duty on the part of any staff to provide information. It would simply say, if you are providing it, make it correct." Id. In the Senate public hearing, the representative who introduced the bill to the House acknowledged, "it would almost be impossible to define" what constituted a "factual information." Tape recording, Senate Committee on Revenue and School Finance, HB 2601, June 4, 1987, Tape 154, Side A, (statement of Oregon Representative Nancy Peterson).
Liquid Air provides a summary of estoppel case law in effect at the time the case was decided. 8 OTR at 167-70. In one case, the taxpayer had to fill out a form every year to cancel personal property assessments. Id. at 167-68 (summarizingJohnson v. Tax Commission (Johnson),248 Or 460, 435 P2d 302 (1967)). The county assessor mailed the required form to the taxpayer for several years. Id. The assessor mailed the taxpayer three duplicate copies of the form, because the form was to be filed in triplicate. Johnson,248 Or at 464. While two copies of the form stated a new deadline, one copy of the form still stated the old deadline. Id. The *Page 18 
deadline was contained in small print and "not readily noticeable."Id. The taxpayer relied on the erroneous date and filed the form after the deadline, causing the assessor to deny the cancellation of the property assessment. Id. at 462. The Supreme Court held that the assessor was estopped to deny the cancellation. Id. at 464. The Court provided the standard that the doctrine of estoppel can only be applied when there is "proof positive that the collector has misinformed the individual taxpayer and the taxpayer has a particularly valid reason for relying on the misinformation and that it would be inequitable to a high degree to compel the taxpayer to conform to the new requirement." Id. at 463-64.
In another case, the Supreme Court estopped the assessor from denying a processor's exemption to the plaintiff when plaintiff missed the statutory deadline. Liquid Air,8 OTR at 168 (summarizing Pilgrim Turkey Packers v. Dept. of Rev.(Pilgrim), 261 Or 305, 493 P2d 1372 (1972)). The court determined the form, prepared by the Department of Revenue, "was ambiguous in its instructions concerning the date when, and the place where, the form was to be filed." Id. (quoting Pilgrim,261 Or at 310). The court specifically held, "[t]he ambiguous nature of the form and the instructions were enough to mislead a reasonable person." Id. (quoting Pilgrim, 261 Or at 310 (internal quotation marks omitted).)
In another case, "the assessor voluntarily supplied exemption forms to the plaintiffs in two consecutive years."Id. at 168 (summarizing Cascade Manor v. Dept. of Rev.,5 OTR 482 (1974)). In the third year, the assessor's office did not mail the form and the plaintiffs missed the statutory deadline.Id. The assessor's office had no duty to send out the forms, but this court estopped the assessor from denying the exemption because the plaintiffs had come to rely upon the procedure.Id. This court determined that only three elements are required "to establish `quasi estoppel': (1) that there must be misleading conduct on the part of an official; (2) that *Page 19 
there must be reliance in good faith upon the conduct of the party estopped; and (3) that there must be injury to the party claiming estoppel." Id. at 169.
Liquid Air then summarized the doctrine of estoppel detailed in the abovementioned cases:
 "If an official engages in misleading conduct, whether that conduct is manifested by an erroneous factual representation or by a course of dealing or conduct which reasonably but erroneously implies to the taxpayer that he need not pursue certain processes in order to safeguard his legal rights, and if the taxpayer is injured because he does not in good faith pursue those processes as a result of relying on such erroneous factual representation or course of conduct or dealing, the official will be estopped from claiming that the taxpayer cannot avail himself of those processes."
Id. at 169-70. Legislative Counsel incorporated this language from the summary of estoppel requirements in proposed ORS 305.145(1)(a) to (c).
After a thorough review of estoppel case law, Liquid Air then returned to the analysis of the issue before the court, eventually concluding that the assessor's office did engage in misleading conduct. Id. at 173. The court reached its conclusion based on the past relationship between the assessor's office and the taxpayers. Id. at 170. The assessor's office sent a notice to the taxpayers that was not, on its face, ambiguous. Id.
However, the notice was "manifestly misleading when considered in the ambience of the prior three-year assessment relationship between the assessor's office and the plaintiff." Id. The court concluded that "misleading" conduct does not have to take place entirely in an isolated contact between a government official and taxpayer. Instead, misleading conduct can be found in an on going relationship between the parties even if no particular contact is misleading when examined independently.
The Tax Court addressed similar facts in Schellin v. Dept. ofRev., 15 OTR 126 (2000). Like the holding in Pilgrim, the court found that a form prepared by the county tax assessor was ambiguous. Id. at 135. The information the taxpayer received was "technically correct" *Page 20 
but ambiguous because it "was capable of producing more than one reasonable interpretation." Id. The court found that the taxpayer had shown "`proof positive' that the assessor misled her * * * and * * * it was reasonable for taxpayer to rely upon those representations." Id. (emphasis added.)
Liquid Air and Schellin offer guidance to the court in determining whether Plaintiff was misled by Defendant. First, even if this court finds the advice from Defendant is technically correct, it may be misleading if it was capable of producing more than one reasonable interpretation. Second, if this court finds that Defendant's advice was misleading, the court must also examine whether it was reasonable for Plaintiff to rely on Defendant's advice.
Applying the estoppel holdings to the facts of this case, Guthrie's correspondence with Gwin was misleading because Guthrie's two letters gave Gwin conflicting and confusing advice. In his first letter, Guthrie describes the 80 percent dividend deduction. His second letter states that ORS 317.267 does not require the "add back" that would make the 80 percent dividend deduction applicable. (Ptfs' Ex 1 and 2.) In his first letter, Guthrie states that ORS 317.267 provides "for an 80% dividend deduction on dividends received from a 20% (or more) owned corporation." (Ptfs' Ex 1.) This dividend deduction is provided in ORS 317.267(2) and (2)(c). ORS 317.267(2) provides in relevant part that, "To derive Oregon taxable income, after the modification prescribed under subsection (1) of this section, there shall be subtracted from federal taxable income an amount equal to 70 percent of dividends * * * received or deemed received from corporations if such dividends are included in federal taxable income." ORS 317.267(2)(c) increases the 70 percent deduction to 80 percent for "any dividend received from a 20 percent owned corporation[.]" Because the dividends are not included in the original federal taxable income, the dividend deduction can only apply if the dividends are first added *Page 21 
back to modify the federal taxable income. This is confirmed by OAR 150-317.267-(B)(1), [6] that provides in relevant part,
 "[A] corporation is allowed to subtract from federal taxable income 80 percent of dividends received or deemed received from another corporation[.] * * * In order to take the Oregon dividends received deduction, however, the corporation must first add back the federal dividend received deductions allowed by Internal Revenue Code (IRC) Sections 243 and 245 and the dividends eliminated under the federal consolidation rules."
(Emphasis added.) Guthrie's first letter references the 80 percent deduction but his second letter states that the dividends do not need to be added back to compute Oregon taxable income. That advice conflicts with ORS 317.267, that allows the 80 percent deduction only after the dividends have been added back.
After using correct terminology in his first letter, Guthrie used incorrect terminology in his second letter to discuss ORS 317.710(5)(b), informing Gwin that the statute requires SIC's removal from SFG's unitary group, even though the statute does not mention "unitary" or "unitary group." (Ptfs' Ex 2.) Guthrie's second letter went on to state, "If [SIC] is unitary with its parent, [its] removal from the Oregon unitary group is required by ORS 317.710(5)(b) because an insurance company has a different apportionment formula from the standard apportionment formula." (Id.) During oral argument, Defendant asserted that a corporation could be unitary with another corporation without being in the same unitary group. Plaintiff responded that this was a contradictory statement. Guthrie's first letter supports Plaintiff's response. In his first letter, Guthrie explained why SFG is "unitary" with SIC by using the "unitary group" definition language. (Ptfs' Ex 1.) That implies that Guthrie viewed "unitary" *Page 22 
and "unitary group" as describing the same thing, with "unitary" describing the relationship of one company to another and "unitary group" describing the collection of companies as a whole.
ORS 317.710(5)(b)[7] does not contain the words "unitary" or "unitary group." ORS 317.710(5)(b) provides in relevant part:
 "[I]f any corporation is permitted or required by a statute or rule to use different apportionment factors than a corporation with which it is affiliated, the corporation shall not be included in a consolidated state return
under paragraph (a) of this subsection."
(Emphasis added.) Based on the actual language of ORS 317.710(5)(b), Guthrie may have meant "affiliated" instead of "unitary" and "consolidated state return" instead of "unitary group." ORS 317.705(1) and (2) contain separate and distinct definitions for "affiliated group" and "unitary group," indicating that the terms are not interchangeable. The language in ORS 317.710(5)(a) also draws a clear distinction between "affiliated group," "unitary group," and "consolidated state return." ORS 317.710(5)(a) provides in relevant part, "[I]f two or more corporations * * * are members of the same affiliated group * * * and are members of the same unitary group, they shall file a consolidated state return." "Affiliated group" and "unitary group" describe the relationship between or among the parties, not the type of tax returns the parties file in Oregon. SIC, an insurance company, and SFG, a group of non-insurance companies, must file separate state returns because they use different apportionment factors; the corporations remain unitary and, therefore, part of the same unitary group. Guthrie used the correct language in his *Page 23 
first letter, stating "ORS 317.710(5)(b) provides that if any corporation is permitted or required to use different apportionment factors than a corporation with which it is affiliated, the corporation shall not be included in a consolidated statereturn" (Ptf s Ex 1. (Emphasis added.))
Even though Guthrie's letters were misleading and meet the statutory requirement of ORS 305.145(1)(a), Plaintiff has not shown that it relied on this misleading information and therefore has not satisfied ORS 305.145(1)(b). When looked at independently, Guthrie's first letter gives straightforward advice supported by statutory language. Guthrie's second letter contains misstatements and internal contradictions. However, as Liquid Air indicates, the court should not examine each isolated contact independently; rather, the court should look at the larger context of the parties' relationship. Liquid Air, 8 OTR at 170. When viewed together, no straightforward advice or recommendation emerges from Guthrie's letters. The second letter contradicted the first letter, which left Plaintiff with conflicting advice. There was no consensus between the letters on what course of action Plaintiff should take; Plaintiff chose the course of action that was most favorable to its interests. Plaintiff did rely on part of Guthrie' s advice by not adding back the dividends, but by doing this, Plaintiff disregarded the advice in Guthrie's first letter that stated that dividends are not "eliminated from SFG's Oregon tax return under ORS 317.715." (Ptfs Exl.)
Liquid Air emphasized that the misleading conduct or information must "reasonably but erroneously impl[y] to the taxpayer that [the taxpayer] need not pursue certain processes in order to safeguard [the taxpayer's] legal rights." 8 OTR at 169. InJohnson, a case cited by Liquid Air, the court examined when a taxpayer can reasonably rely on conflicting and irreconcilable information provided by a government official.See Johnson, 248 Or 460. While Johnson *Page 24 
found the taxpayer had been misled and had relied on the misleading information, that case is distinguishable from the current issue before the court. Even though the court did not specifically state what makes a "particularly valid reason," it was a combination of factors — the deadline had remained the same for several years, the taxpayer had filled out the same form for several years, the taxpayer did not know the deadline had changed and found confirmation that the old deadline was still in effect on one of the forms provided by the assessor, and the conflict between the two deadlines was found in small print on copies of seemingly identical forms. Further, the taxpayer testified that he did not see the conflicting date on the other two forms. Id. at 463-64. The taxpayer did not see both deadlines and choose which one to follow; rather, he only saw one deadline. Id.
In the case before this court, Plaintiff does not have a "particularly valid reason" for choosing to rely on only some of the advice provided by Defendant. Plaintiff was not relying on any outdated information; instead, Plaintiff was encountering a new situation it had not dealt with before.[8] While the taxpayer inJohnson claimed not to see the conflicting dates, Plaintiff acknowledges receiving both letters from Guthrie by providing copies of those letters to the court. Plaintiff should have been fully aware of the conflicting information. Plaintiff did not ask for further clarification from Defendant. Instead, Plaintiff chose which parts of Guthrie's advice to follow and which parts to ignore. There is no evidence showing how Plaintiff reconciled Guthrie's conflicting information or that it had a "valid reason" for relying on it. *Page 25 
Having concluded that Plaintiff does not have a "particularly valid reason" for relying on Defendant's conflicting information and that Plaintiff failed to meet one of the three statutory requirements, the court need not consider whether Plaintiff "suffered a detriment." ORS 305.145(1)(c).
 III. CONCLUSION
After careful consideration of the facts and law, the court concludes that Plaintiff must include the intercompany distribution from its wholly owned insurance subsidiary in its Oregon taxable income. The court concludes that Plaintiff has not proven that it was misled by Defendant and is not entitled to a waiver of interest and penalties. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiffs' Motion for Summary Judgment is denied;
IT IS FURTHER DECIDED that Defendant's Cross-Motion for Summary Judgment and Response to Plaintiffs' Motion for Summary Judgment is granted.
IT IS FURTHER DECIDED that Plaintiffs' Motion to Supplement the Record is denied with the exception that a letter, dated October 22, 1999, written by Gwin to Guthrie is admitted without objection.
Dated this ____ day of August 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor,1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This document was signed by Presiding Magistrate Jill A.Tanner on August 18, 2011. The Court filed and entered this documenton August 18, 2011.
[1] The above stated caption matches Plaintiff's filed Complaint, referencing Plaintiff in the singular form. In its Decision, the court will use Plaintiff's Complaint caption when referring to Plaintiff. After Plaintiff's Complaint was filed, the parties referenced Plaintiff in the plural. When referencing documents filed by the parties, the court will cite the title of those documents as filed.
[2] Unless otherwise stated, references to Oregon Revised Statutes (ORS) are to 2001. If there is a statutory change to a referenced ORS in a year subsequent to 2001, that change is noted.
[3] Plaintiff's Exhibit 9, attached to the Declaration of Elisabeth Shellan, is the testimony of Elizabeth Stockdale (Stockdale) before the House Committee on Revenue and School Finance Subcommittee on Income Tax on May 9, 1985.
[4] The Magistrate Division of the Oregon Tax Court is not a court of record. Plaintiff provided the court with a copy of its transcript of the proceeding. This argument is at pages 53-55.
[5] ORS 305.880 does not explicitly reference ORS 305.145(1), but rather ORS 305.145 generally. However, ORS 305.880 refers to ORS 305.145 for the "manner" that an officer or employee of the department misleads the taxpayer. ORS 305.145(1) is the only subsection that describes a manner of misleading the taxpayer. ORS 305.145(2) addresses timeliness of appeal and ORS 305.145(3) addresses the department's discretionary waiver of penalties.
[6] Refers to the 1999 edition of the Oregon Administrative Rules (OAR), that was in effect when Guthrie wrote his second letter. There was a special session in 1999.
[7] The 1999 ORS edition is applicable because the letter was dated 2000. However, the language did not change during the relevant tax years at issue.
[8] SIC was converting from a mutual insurance company to a stock insurance company. (Aff of Paul Goodwin at 1, ¶ 3.) *Page 1