# IN THE OREGON TAX COURT

## Bob MAHLER
*v.*
## DEPARTMENT OF REVENUE
(TC 2919)

Plaintiff appeared *pro se.*

Rochelle Nedeau, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered May 31, 1990.

### CARL N. BYERS, Judge.

Plaintiff appeals from defendant's Opinion and Order No. 88-1574 which refused to hear plaintiff's property tax appeal for the years 1987-88 and 1988-89. The narrow issue before the court is whether defendant should have taken jurisdiction of the case under its supervisory authority.

The object of this appeal is a commercial building and lot in Salem. Plaintiff bid $38,500 for the property at open auction. His bid was accepted May 6, 1988. Plaintiff knew that the assessed value of the property was $64,000. What plaintiff did about the difference, or more precisely *when* plaintiff acted, is in conflict. Each of the parties offers their own version of the facts.

Plaintiff testified that he went to the assessor's office on May 10, 1988, and completed a "Request For Adjustment Of True Cash (Market) Valuation." His copy of the request shows him as the owner and is dated May 10, 1988. He testified that a clerk in the assessor's office advised him not to appeal to the board of equalization until he received a notice. He was aware the last date for appealing to the board of equalization was May 31. As time went by and he received no notice, he began to worry. In the afternoon of May 31, 1988, he called the assessor's office to inquire about his request. Whoever he spoke to advised him that he must appeal "today." Plaintiff picked up the forms but was unable to complete and file them before the close of business. He testified that since it was a Friday, he was unable to file the petition until the following Monday.[1] The board of equalization declined jurisdiction to hear plaintiff's late appeal. Plaintiff then appealed to defendant, which also declined jurisdiction.

Defendant believes that plaintiff simply filed his petition to the board of equalization late. He was denied relief by the board and, in turn, by the defendant. Defendant believes that only later, sometime in March or April of 1989, did plaintiff file the request for reevaluation. The assessor's office acted on the request and reduced the value to $38,500 in April of 1989.

Appeals in the regular course must be filed with the board of equalization not later than May 31 of each year. ORS 309.100(2)(d). A taxpayer missing the regular filing deadlines for appeals can petition defendant to exercise its supervisory authority. Under that authority, defendant has limited power to correct errors in matters of property taxation. ORS 306.115.

---

[1] May 31, 1988, was not a Friday but a Tuesday. Plaintiff's petition was received by the board of equalization on June 3 1988, which was a Friday. On this point, plaintiff concedes his memory was faulty.

The statute sets forth several conditions but defendant found none of them applied. The court will mention only two.

■       The statute permits the defendant to correct "gross errors." However, if the property is nonresidential property and a notice of value increase is sent to the owner, the department may not correct a gross error. In this case, a notice was sent to the owner.

■       A second condition allows the department to take jurisdiction of a case if the taxpayer failed to timely appeal for "good and sufficient cause." However, buying property after the last date for appealing to the board of equalization is not a good and sufficient cause. OAR 150-306.115 and OAR 150-307.475.

Plaintiff claims that he relied upon the erroneous advice of a clerk in the assessor's office which caused him to file his petition late. Defendant's administrative rule provides that "[r]easonable reliance on misinformation provided by county assessment and taxation staff" is good and sufficient cause. OAR 150-307.475(2)(C). Defendant challenges plaintiff's claim on several points.

Defendant asserts that plaintiff is in error. Defendant argues that plaintiff could not have completed the request for adjustment of true cash value in the assessor's office in May of 1988 as claimed. The printed form request has a notation in the lower left-hand corner "REVWFORM: 10-88 PG 1." Defendant argues that since the review form was revised in October of 1988 it would have been impossible for plaintiff to have used the form in May of 1988. Although plaintiff's copy shows a date of "5-10-88," the original request filed with the assessor's office is undated. Defendant questions how the date got on plaintiff's copy.

Review of the request form also raises another question. The form shows a purchase date for the property of "8-1-88." That is the date the deed was recorded in plaintiff's name. How could plaintiff know in May of 1988 that the transaction would close on August 1, 1988? Plaintiff's earnest money agreement specified a closing date of June 5, 1988. Moreover, while plaintiff was the "owner," as shown on the request form as of August 1, 1988, he was not the owner in May of 1988.

Defendant's witness testified that the property was reappraised and reduced to the $38,500 purchase price in April 1989. The witness stated that the property would not have been reappraised simply because of the sale. He stated that the reappraisal would have to be prompted by a complaint or request for reevaluation.

Based on all of the above, the court has serious doubts plaintiff filed the request on May 10, 1988.

Defendant also questions plaintiff's credibility. Plaintiff did not raise the claim that he had been misled until reaching this court. He made no mention of being misled in either his petition to the board of equalization or to defendant. He did not mention the issue at the Department of Revenue hearing. If plaintiff believed that misleading information was the reason he filed his appeal late, it is logical to infer that he would have mentioned it at the Department of Revenue. However, there is no need to resolve the question of credibility.

As a general proposition, this court will not find "reasonable reliance" on oral advice when written documents furnished to the taxpayer give the correct information. There are many possibilities for misunderstanding with oral communication. The taxpayer may not give complete or accurate information to the tax authorities. The taxpayer may fail to understand the answer given. If the tax authorities give the taxpayer the correct information in writing, that is the most reliable evidence of what was communicated. *Rothenfluch v. Dept. of Rev.*, 11 OTR 322 (1990):

In this case, the taxpayer was not told that the promised notice would extend the time to appeal. He must have realized, or should have, that the assessor might not be able to review the request before May 31. Even if the assessor did review the request, he might not agree with plaintiff's value. Thus, even if the clerk gave plaintiff poor advice, he was not justified in letting the appeal period expire without acting to protect his rights.

The court finds that plaintiff did not appeal timely and failed to show good and sufficient cause for doing so. Defendant's Opinion and Order No. 88-1574 must be sustained. Defendant shall recover its costs and disbursements.