Carole SMITH
and Eric Kittleson
*v.*
DEPARTMENT OF REVENUE
*and*
MARION COUNTY,
a political subdivision of the State of Oregon,
*Intervenor*
(TC 3611)

Mark K. Grider, Salem, represented plaintiff.

Jane Ellen Stonecipher, Assistant Legal Counsel for Marion County, Salem, represented intervenor.

James C. Wallace, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered December 16, 1994.

**CARL N. BYERS, Judge.**

Plaintiffs appeal the denial of special assessment for their historic building for tax year 1992. The appeal is grounded on claims of statutory construction and estoppel.

Plaintiffs are husband and wife. In February 1991, they purchased a building on Court Street in Salem known as the old Paulus Building. Prior to purchase, plaintiffs contacted the State Historic Preservation Office (SHPO) and indicated an interest in having the property listed as historic property. As plaintiff Carole Smith (Smith) indicated in her testimony, her primary motivation for obtaining a listing was the tax benefits. The laws provide a federal income tax credit of 20 percent and a special assessment which freezes the value for property tax purposes for 15 years. James Hamrick, Deputy State Historic Preservation Officer, toured the building with Smith before plaintiffs purchased it. Smith testified that they discussed the timing of applications, and Hamrick informed her that "everything" had to be filed before December 31, 1991. If filed later, the specially assessed value would be based on the higher postremodeled value.

Plaintiffs hired two experts to assist them in obtaining the historic designation and the accompanying tax benefits. One expert researched the history of the building and the other expert used that information in preparing the application for listing on the National Register of Historic Places. The application was submitted to SHPO. By letter dated November 4, 1991, plaintiffs were informed that the application had been approved by the state advisory committee and was being forwarded to the National Register. Later, an SHPO letter informed plaintiffs that their application had been successful and the property had been entered in the National Register on March 5, 1992. Both letters contained the following statement:

> "It should be remembered that participation in the program for special assessment of historic properties is optional and involves an entirely separate application process."

Meanwhile, in July 1991 plaintiffs began rehabilitation of the building. Although plaintiffs purchased the property for $115,000, its assessed value was $140,000. After

rehabilitation, its real market value is approximately $250,000. In August 1992 the Marion County Assessor's office assessed the property for taxation. It was at that time plaintiffs learned that no application for special assessment had been filed.

Plaintiffs believed the application for special assessment had been part of the materials filed. However, SHPO had no record of any application being filed. Moreover, the assessor had not been notified that the property was classified as a historic property. On the advice of SHPO and the assessor, plaintiffs then made application for special assessment. However, because the application was made after December 31, 1991, the value is frozen at $250,000, the postrehabilitation value, rather than the $115,000 plaintiffs paid for the property. If plaintiffs had applied for special assessment before December 31, 1991, they would have been entitled to special assessment for 15 years at the lower value.

Even though plaintiffs did not apply for special assessment in a timely manner, they claim entitlement to assessment at the lower value on two theories. Plaintiffs assert that (1) the statutes require assessment as of the year of application, and (2) that the government should be estopped to deny plaintiffs' entitlement to the benefits.

■ Plaintiffs' statutory construction argument essentially is that the government is obligated to treat the application for special assessment as if made in October 1991 because the property was placed on the National Historic Register before March 15 of the following year. However, plaintiffs argument continues the confusion they initially suffered concerning which "application" was involved. The application completed by plaintiffs only sought listing on the National Register of Historic Places, not application for special assessment. As Hamrick pointed out, application for listing on the National Register of Historic Places and the application for special assessment are separate forms and separate processes. The court is unable to find any language in the statute which supports plaintiffs' construction.

Plaintiffs believe the government should be estopped from denying them special assessment for 1991. When plaintiffs were investigating the property, Hamrick

walked through the building with plaintiffs. Smith testified they discussed registering the property as a historical building and discussed the entire "benefit package" associated with such registration. She indicated that Hamrick told her the application for special assessment had to be filed by December 31, 1991. Smith later telephoned the SHPO office and asked for the forms. She went by and personally picked up the forms. Smith assumed all of the appropriate forms were in the packet. She admitted that the process was "over her head." The hired experts completed the application and it was submitted.

In a later letter to Hamrick, Smith indicated "we assumed the special assessment was included in the forms we filled out." Smith understood that the application for listing on the National Register of Historic Places included special assessment. She indicated that when Hamrick talked about the application for special assessment, she "assumed you meant the application for listing on the Registry."

Hamrick testified he personally handled applications for investment tax credits but did not handle applications for special assessment. He assumed plaintiffs read the materials that had been sent to them and knew that the application for special assessment was a different application. Apparently, Hamrick does not follow up on applications to know whether individuals are taking the necessary steps to obtain the benefits sought. Smith asserts she did not receive the form to apply for special assessment. The application is a blue form and she would have remembered it. There was no evidence of what was included in the original packet.

As a test after the dispute arose, plaintiffs telephoned SHPO and requested forms. The packet which was received included an application for special assessment. However, there is no way of knowing what was requested in either the original request or the "test" request.

Plaintiffs' claim that Hamrick misled them into thinking they would receive all the forms. However, plaintiffs did not request the forms of Hamrick but of another employee in the SHPO office. Further, even if plaintiffs had been misled, the letter of November 4, 1991, clearly indicated that special assessment was a separate process.

■ As indicated by the Oregon Supreme Court in *Johnson v. Commission*, 248 Or 460, 435 P2d 302 (1967), the doctrine of estoppel is rarely applied in matters of taxation. To be applied there must be (1) misleading conduct by an official, (2) good faith reliance upon the party estopped, and (3) injury to the party claiming estoppel. *Liquid Air Inc. v. Dept. of Rev.*, 8 OTR 159, 169 (1979).

■■ In this case, plaintiffs have not shown that Hamrick or anyone in the SHPO office misled plaintiffs. Plaintiffs may have been misled with regard to the level of assistance SHPO would provide. However, it is not inequitable to hold plaintiffs to the requirements of the law because plaintiffs made assumptions contrary to the written materials furnished. When written materials containing accurate information and advice are given to taxpayers, taxpayers may not continue to rely on an understanding based on oral representations or discussions which are contrary to the written information. *See Mahler v. Dept. of Rev.*, 11 OTR 367 (1990).

The court finds estoppel should not apply. Accordingly, department's Opinion and Order No. 93-1105 must be sustained. Costs to neither party.