DECISION OF DISMISSAL
This matter is before the court on Defendant's Motion to Dismiss, filed as part of its Amended Answer[1] on April 12, 2010, requesting that Plaintiffs' appeal be dismissed.
Oral argument was held via telephone on May 11, 2010. David Pippenger (Pippenger) appeared on behalf of Plaintiffs. David Evans (Evans), Farm/Forest Appraiser, appeared on behalf of Defendant.
 I. STATEMENT OF FACTS
The parties agree that on August 5, 2009, Defendant notified Plaintiffs in writing that it disqualified the following acreage owned by Plaintiffs from farm special assessment:
Account Acreage
1812377 5.89 Acres
1812385 7.43 Acres
1812708 6.98 Acres

(Ptfs' Compl at 5.) In its August 5, 2009, letter, Defendant stated that it was disqualifying the subject property because Plaintiffs' failed "to meet the income requirements under ORS 308A.071, as specified in ORS 308A.116(1)(c). Based on your response to the income questionnaire and schedule F's (sic) received, you did not meet the income requirement for 3 out *Page 2 
of 5 years." (Id.) (Emphasis removed.) The letter explained that if Plaintiffs did not "submit an application for requalification on or before December 15 of the tax year for which the disqualification is first in effect, * * * the potential additional taxes will be deferred under ORS 308A.706(1)(e) provided the land continues to maintain limited farm use." (Id.) (Emphasis removed.) The letter stated that "[a]ny acres deferred under ORS 308A.706(1)(e) will no longer be specially assessed and will be assessed based on market value as calculated under ORS 308.156." (Id.)
The second page of the letter, in a section entitled "Additional Tax Information," explained that the potential additional taxes have been deferred, set forth the amount of the potential additional taxes, and stated that the potential additional taxes would "appear as a 2009 Postponed Farm Tax on your tax statement." (Id. at 6.) (Emphasis removed.) The following sentence appeared in a subsequent paragraph:
 "Following this disqualification any land that is no longer in a special assessment program will be based on market value as calculated under ORS 308.156."
(Id.) (Emphasis removed.)
Prior to the disqualification of the subject property, Plaintiffs acknowledged receiving a request to "prove that [the subject property was] farmed * * * for 3 of the last five years." (Ptfs' Compl at 2.) Pippenger testified that he spoke with Evans, whom he recollects stated that there are "equal" alternatives, neither resulting in an additional tax assessment. He stated that the two "equal" alternatives were: (1) Plaintiffs could prove that they or the prior owners farmed the subject property for the last three of the five years; or (2) Plaintiffs could farm the subject property for "three of the next five years." Pippenger testified that Plaintiffs decided not "to fight the revocation" because there was "no risk of the `additional taxes' actually being demanded." (Ptfs' Opposition to Def's Mot to Dismiss for Failure to File a Timely Appeal at 2.) *Page 3 
Evans testified that, in addition to the county's issuance of the letter of disqualification, the county issued to Plaintiffs a 2009-10 property tax statement in October 2009, that showed the potential additional tax and the 2009-10 tax assessment for the subject property that was no longer in the farm special assessment program. He further testified that the 2009-10 property tax statement stated "the increase in Assessed Value from the prior year, the increase in Property Taxes resulting from the disqualification and the Postponed Additional Tax." (Def's Answer to Ptf's Request to Dismiss Def's Mot to Dismiss at 2; Def's Ex A.) Pippenger testified that Plaintiffs acknowledge receipt of the 2009-10 property tax statement but concluded that, based on prior telephone conversations with Evans and Angela Godwin, Farm/Forest Clerk, Plaintiffs did not have a property tax liability to pay.
Pippenger testified that in January 2010, when Plaintiffs received a second notice stating that "interest" was being charged for their failure to pay the 2009-10 property taxes, he called Defendant and spoke with Godwin. He testified that "[i]t was at that time that Angela Godwin mentioned that she didn't think that the yearly property taxes were being deferred, but instead that it was a five year `back tax' penalty that was being deferred * * *. After putting the plaintiffs on hold and checking with her supervisor, she affirmed that this was indeed the case. This was the first time any mention was made to the plaintiffs of the existence of this `back tax.'" (Ptf's Opposition to Def's Motion to Dismissal for Failure to File a Timely Appeal at 3-4.) (Emphasis in original.)
Pippenger testified that he believes Plaintiffs "had `good and sufficient cause' for not filing a timely appeal due to `relevant misleading information' provided by `an authorized tax official' of the office of the Lane County Department of Assessment Taxation which constitutes an extraordinary circumstance beyond their control." (Id. at 4.) In response, Evans *Page 4 
testified that Defendant "strenuously den[ies] * * * making false or misleading statements. * * * [M]ost of the information Plaintiffs claim they erroneously received verbally from Defendant[] is explicitly covered by and contained in the notice of disqualification." (Def's Answer to Ptf's Request to Dismiss Def's Mot to Dismiss at 2.) Evans requested that the court take notice of a prior decision, "Smith v. Dept. of Rev., 13 OTR 206," in which "the Tax Court stated, `When written materials are given to taxpayers containing accurate information and advise (sic), taxpayers may not continue to rely on an understanding based on oral representations or discussion which are contrary to the written information." (Id.)
Pippenger testified that Plaintiffs were "diligent" in "trying to understand the county's request," and that there was a "miscommunication" between "people who do this every day" and "those who do not." He testified that he and his son are "doing what the law requires; we are farming the property."
 II. ANALYSIS
The parties agree that Plaintiffs did not timely appeal Defendant's disqualification of the of subject property from farm special assessment. The issue before the court is whether Plaintiffs' appeal of the disqualification must be dismissed. Plaintiffs argue that Defendant should be estopped from denying the subject property's farm special assessment because Plaintiffs relied on oral communications with Defendant's representatives that lead them to conclude that there was no immediate financial detriment to them resulting from the disqualification and no reason for them to challenge the disqualification.
In the area of taxation, estoppel is granted in rare instances[1]
when the following three elements have been proved: (1) Defendant's conduct misled Plaintiff; (2) Plaintiff had a good *Page 5 
faith reliance on the conduct; and (3) Plaintiff was injured by reliance on Defendant's conduct. Sayles v. Dept. of Rev.,13 OTR 324, 328 (1995). With respect to the first element, "taxpayers can claim estoppel against governmental taxing authorities only `when there is proof positive that the collector has misinformed the individual taxpayer.'" Webb v. Dept. of Rev.,18 OTR 381, 384 (2005), quoting Johnson v. Tax Commission,248 Or 460, 463, 435 P2d 302 (1967). This court has concluded that "proof positive" is a "stringent proof requirement." Id.
Taxpayers have prevailed when there was proof of "incorrect or misleading documents sent by taxing authorities to the taxpayer," or proof positive of a taxing authority's "misleading course of conduct."Id. (citations omitted). However, there are few cases in which an Oregon court has considered oral communication to constitute a part of `proof positive.'" See Pilgrim Turkey Packers v. Dept. of Rev.,261 Or 305, 310, 493 P2d 1372 (1972) (finding "`proof positive' of misleading conduct in the ambiguous form alone, but [holdin] that the taxpayer's claim of estoppel was made `even stronger' by the evidence of oral misinformation." Webb v. Dept. of Rev. (Webb),19 OTR 20, 26 (2006)).
In this case, Plaintiffs repeatedly testified that they relied on Defendant's representatives' oral communication. To meet the standard of proof positive, taxpayers who rely on oral communication must provide "detailed memoranda that are written contemporaneously with the communications and that corroborate the taxpayer's recollection of them * * * [or] describe[] the communications in great detail, including the nature, date, and time of each conversation; the names and relationships to the parties of all those who took part in each conversation; those persons' knowledge of taxpayer's situation and of the relevant law; and the exact statements made as well as their form and intended meaning."Webb, 19 OTR at 26. *Page 6 
Pippenger testified about he engaged in three separate telephone conversations with Defendant's representatives. He testified that he initiated those telephone conversations, seeking an explanation of Defendant's disqualification act and whether or not he should appeal the act. At the conclusion of the first telephone conversation with Evans, Pippenger informed Defendant that Plaintiffs would not contest the disqualification. He believed that there was no immediate financial assessment. It was not until the third telephone conversation that Pippenger understood how the subject property would be valued for tax years before and after the disqualification and the financial impact to Plaintiffs.
The case before the court is similar to the situation inSchellin v. Dept. of Rev. (Schellin),15 OTR 126 (2000) (Schellin). In Schellin, taxpayer testified that "she was orally misled by employees at the assessor's office on two separate occasions." Id. at 135. The court held that "such oral evidence insufficient to show `proof positive' that taxpayer had been mislead." Id. It went on to state that "[w]ritten materials however, are given greater weight than oral testimony." Id. The court concluded that the written notification in the form of the Assessor's Recommendation that the taxpayer received was "technically correct," but "ambiguous" because it "was capable of producing more than one reasonable interpretation." Id. The court held that the taxpayer had shown "`proof positive' that the assessor misled her * * * and [] it was reasonable for taxpayer to rely upon those representations." Id.
In the case before the court, the oral communication between the parties confirms the court's prior holding of how difficult it is to rely solely on oral communication to show that Defendant's conduct misled Plaintiffs. Plaintiffs agree that Defendant's oral communication did not mislead them about the "postponed" or "deferred" tax assessment. Pippenger acknowledges *Page 7 
after reading Defendant's August 5, 2009, letter describing potential additional tax that it "appeared to be the same statement made by Mr. Evans." (Ptfs' Compl at 2.)
There was no testimony about oral communications addressing the issue of how the subject property would be taxed after the disqualification. That subject was either not discussed by the parties or Plaintiffs have no recollection of that subject being discussed. Pippenger's testimony shows that he did not understand that there was a difference between potential additional tax and future tax assessments. During verbal communications, there is no statutory requirement for county officials to anticipate or raise on their own initiative all tax issues related to a tax program. The difficulty is for someone who knows nothing or little about a subject to ask all the right questions. County officials respond to questions asked; if a question is not asked, then there is no shared information. Here, absent oral communication about current tax year valuation, there is no positive proof that Defendant misled Plaintiffs about how the subject property would be valued after the disqualification and future tax assessments.
The subject of valuation and future tax assessments were explained in Defendant's letter dated August 5, 2009. In a separate paragraph in bold type, Defendant's letter stated:
 "Following this disqualification any land that is no longer in a special assessment program will be based on market value as calculated under ORS 308.156."
(Ptfs' Compl at 6.) In a separate sentence, Defendant's letter stated:
 "Any acres deferred under ORS 308A.706(1)(e) will no longer be specially assessed and will be assessed based on market value as calculated under ORS 308.156."
(Id. at 5.)
Although both sentences state that the subject property will be valued and assessed at market value after the subject property is no longer in the farm special assessment program, both sentences are placed within or in close proximity to sentences discussing the deferral of potential *Page 8 
additional taxes. To assist someone who has no prior understanding of the law and is trying to understand the letter's content, the sentence placement could have been more prominent and included new subheadings to alert the reader. However, the words in both sentences are not misleading. The sentence with bold type in a separate paragraph is not "ambiguous," and it is not "capable of producing more than one reasonable interpretation." Schellin, 15 OTR at 135.
The court concludes that Plaintiffs failed to prove that "Defendant's conduct mislead" them. Having failed to prove one of the three required elements of promissory estoppel, Plaintiffs' appeal must be dismissed.
This is a very unfortunate outcome for Plaintiffs because Pippenger testified that Plaintiffs are now farming the subject property and it is his belief that the prior owner also met the statutory requirements for farm special assessment. There are no statutory provisions allowing the court to forgive or erase the decision made by Plaintiffs to forego filing a timely appeal of Defendant's disqualification. Now, therefore,
IT IS THE DECISION OF THIS COURT that Defendant's motion to dismiss is granted.
Dated this ___ day of August 2010.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the date ofthe Decision or this Decision becomes final and cannot be changed.
 This Decision was signed by Presiding Magistrate Jill A. Tanneron August 19, 2010. *Page 9 The court filed and entered this Decision on August 19, 2010.
[1] Defendant's Amended Answer was filed within the time allowed by Tax Court Rules (TCR) 23A.
[1] "The policy of efficient and effective tax collection makes the doctrine of rare application." Johnson v. Tax Commission,248 Or 460, 463, 435 P2d 302 (1967).