IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| BRUCE E. FRANSEN<br>and NANCY FRANSEN, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 190050G |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE,<br>State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **ORDER DISMISSING COMPLAINT** |

This matter came before the court on Defendant's motion to dismiss Plaintiffs' Complaint as untimely. Plaintiffs filed their Complaint by mail in an envelope postmarked March 1, 2019, appealing Defendant's Notice of Proposed Refund Adjustment, dated August 3, 2018. The tax year at issue is 2014.

A taxpayer receiving a notice of proposed adjustment is entitled to appeal to this court "within 90 days after the date the notice of adjustment is final." ORS 305.280(2).[1] Recipients of such notices may seek administrative review from Defendant by requesting a conference or submitting written objections "within 30 days of the date of the notice of proposed adjustment[.]" ORS 305.270(4)(b). If no such administrative review is sought, the notice of proposed adjustment becomes final at the expiration of the 30-day period. *See* ORS 305.270(5)(b). Thus, a taxpayer who takes no other action is allowed 120 days from the date of a notice of proposed adjustment to appeal to this court.

Here, Plaintiffs' Complaint is deemed to have been filed on March 1, 2019, a date which occurred 210 days after the date on the adjustment notice. *See* ORS 305.418(1) (mailed

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2017.

complaints deemed filed on postmark date). There is no indication that Plaintiffs sought administrative review before filing their Complaint.

In their Complaint and in their response to Defendant's Motion to Dismiss, Plaintiffs describe the difficult circumstances they have faced over the past five years. The court accepts Plaintiffs' allegations as true for purposes of deciding this motion.

Plaintiffs had declared bankruptcy by sometime in 2013; they were to remain in bankruptcy until June 2018. In 2014, an error by a contract employment agency resulted in "a tremendous amount" of excess withholding from Plaintiff Bruce Fransen's pay while he worked out of state. Although Plaintiffs knew they were owed a refund of their Oregon overpayment, their bankruptcy lawyer advised them not to file taxes while a dispute with their loan servicers was underway. Plaintiffs followed that advice for the next several years, with their accountant filing for extensions for 2014, 2015, and 2016.

By 2018, Plaintiffs had become disillusioned with the progress of their bankruptcy case. After consulting another lawyer, they settled with their loan servicers and directed their accountant to file their 2014, 2015, 2016, and 2017 taxes in April 2018. Plaintiffs' returns reported an overpayment for 2014 and taxes owed for the subsequent years. On June 28, 2018, Plaintiffs' bankruptcy case was closed.

Defendant issued Plaintiffs its notice of adjustment on August 3, 2018, denying them a refund for 2014 because their return was received more than three years after the due date.[2] That

---

[2] The adjustment notice cited ORS 314.415(2)(a), which states:

"The department may not allow or make a refund after three years from the time the return was filed, or two years from the time the tax (or a portion of the tax) was paid, whichever period expires later, unless before the expiration of this period a claim for refund is filed by the taxpayer in compliance with ORS 305.270. In any case, if the original return is not filed within three years of the due date, excluding extensions, of the return, the department may allow or make a refund only of amounts paid within two years from the date of the filing of the claim for refund. If a refund is disallowed for the tax year during which excess tax was paid for any reason set forth

notice contained information regarding Plaintiffs' rights to seek administrative review of the adjustment notice from Defendant and to appeal to this court.[3]

Plaintiffs did not initially attend to the appeal rights on the notice of adjustment, being focused on arranging a payment schedule for taxes owed in the subsequent years. After starting payments on that debt, they remembered they could dispute the denial of the 2014 refund. They consulted their accountant, and additional time passed as they awaited his advice. During that entire period, Plaintiffs were unaware of the appeal deadline. They first saw the deadline on the notice of a adjustment "a couple of days before [they] composed and submitted [their] written response to the Refund Non-Payment[.]" The court infers that Plaintiffs' "written response" was their Complaint.

Plaintiffs acknowledge that their Complaint was filed after the deadline. They ask that their appeal nevertheless be allowed

> "due to excessive hardship caused by all the confusion surrounding the multiple year[s], multiple state filings, in addition to the ongoing activity and reporting required with the bankruptcy court, counteracting attorney misrepresentation, caused us to miss a crucial deadline and contributed directly to causing us to be told by the State of Oregon that we have no legal recourse to petition for recovery of taxes that we overpaid in 2014 for which a refund was due."

/ / /

---

in this subsection, the department may not allow the excess as a credit against any tax occurring on a return filed for a subsequent year."

[3] With respect to appeals to this court, the adjustment notice stated:

"If you don't file your appeal with us within 30 days, or you want to appeal a written objection or conference decision, you must appeal directly to the Magistrate Division of the Oregon Tax Court.

"If you didn't submit a written objection or request a conference, you must file your appeal within 120 days of the date of our original notice informing you of the adjustment to your refund. If you're appealing the decision from your written objection or conference, you must file your appeal within 90 days of the date of the written decision regarding your appeal."

Plaintiffs thus allege that the statute of limitations be set aside because of hardship and, possibly, because they were told by the State of Oregon that they had no legal recourse. Each argument will be addressed in turn.

A request to "set aside statutory deadlines when a taxpayer misses those deadlines for reasons personal to the taxpayer" is a request to apply equitable tolling. *Webb v. Dept. of Rev.*, 18 OTR 381, 384 n 3 (2005). Courts have applied equitable tolling "sparingly," limiting its application to two circumstances: where a claimant has filed a defective pleading within the statutory period, and where a claimant's adversary has misled the claimant into allowing the filing deadline to pass. *DeArmond v. Dept. of Rev.*, 14 OTR 112, 117 (1997), *aff'd*, 328 Or 60, 968 P2d 1280 (1998) (holding equitable tolling not applicable to toll statute of limitations in tax refund case). Under the parlance employed by this court in *Webb*, the second of those two limited circumstances would now be analyzed as equitable estoppel rather than equitable tolling. *Webb*, 18 OTR at 384 n 3.

In the present case, Plaintiffs have alluded to what might be an equitable estoppel claim, discussed immediately below. However, the remainder of the hardship they allege—while clearly a real suffering for them—does not fit the limited circumstances under which equitable tolling may be allowable because they did not file a defective appeal within the period of limitations. *See DeArmond*, 14 OTR at 117. What is more, Plaintiffs have not shown how the specific incidents they identify directly affected their failure to timely appeal. Plaintiffs had already filed their taxes, ended their bankruptcy case, and fired their lawyer before Defendant issued its notice of adjustment.

Plaintiffs' statement that the State of Oregon told them they had no legal recourse to petititon for recovery of their 2014 overpayment is probably a reference to the adjustment

notice's explanation that ORS 314.415(2)(a) barred Defendant from issuing refunds unclaimed within three years from the due date of the return. It is probably not an estoppel claim because nowhere in their account of the hardship they faced did Plaintiffs allege that Defendant had misled them about their right to appeal its adjustment notice.

If Plaintiffs had claimed estoppel, they would have had to prove three elements: "(1) misleading conduct on the part of the department; (2) taxpayer's good faith, reasonable reliance on that conduct; and (3) injury to taxpayer." *Webb*, 18 OTR at 383.

The facts admitted by Plaintiffs show that an estoppel claim could not succeed here. "When written materials containing accurate information and advice are given to taxpayers, taxpayers may not continue to rely on an understanding based on oral representations or discussions which are contrary to the written information." *Smith v. Dept. of Rev.*, 13 OTR 206, 210 (1994). There is no dispute that the appeal rights contained on the adjustment notice were accurate, and Plaintiffs were not entitled to rely on any contrary information they received orally. *See id*. Furthermore, Plaintiffs admit they did not see the appeal deadline on the adjustment notice until "a couple of days" before they filed their Complaint. By that time, the limitations period had long since passed. Plaintiffs' failure to file timely was apparently a consequence of having overlooked the deadline rather than an injury caused by Defendant.

The court can find no warrant in the law for setting aside the period of limitations in this case. Accordingly, Defendant is entitled to prevail on its Motion to Dismiss. Now, therefore,

/ / /

/ / /

/ / /

/ / /

IT IS ORDERED that Plaintiffs' Complaint be dismissed.

Dated this ___ day of August, 2019.

_____
POUL F. LUNDGREN
MAGISTRATE

*This is an order disposing of all issues pursuant to Tax Court Rule – Magistrate Division 16 C(1). The court will issue a decision after waiting 14 days to determine whether there is a dispute about costs and disbursements. Errors in this order may be challenged by appealing the court's decision. See TCR-MD 19.*

*This document was signed by Magistrate Poul F. Lundgren and entered on August 5, 2019.*