IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

KEVIN C. MAILLARD                        )
and RHONDA MAILLARD,                     )
                                         )
            Plaintiffs,                  )      TC-MD 210345N
                                         )
      v.                                 )
                                         )
DEPARTMENT OF REVENUE,                   )
State of Oregon,                         )
                                         )
            Defendant.                   )      **DECISION**

Plaintiffs appealed Defendant's Notices of Assessment, dated July 13, 2021, for the 2015

and 2016 tax years.  A trial was held remotely on November 17, 2022.  Plaintiffs each appeared

and testified on their own behalf.  Dane Palmer (Palmer), tax auditor, appeared and testified on

behalf of Defendant.  Plaintiffs offered an unlabeled packet of documents totaling 293 pages.

Palmer stated that he had not received Plaintiffs' documents.  Plaintiffs' certificate of service

listed two addresses for Palmer: one in Salem and one in Eugene.  Plaintiffs clarified that they

mailed the exhibits to the Salem address, although Defendant's Answer lists the Eugene address.

Many of Plaintiffs' documents overlapped with Defendant's Exhibits,[1] so the court admitted and

relied upon Defendant's Exhibits A to G (tax year 2015) and A to E (tax year 2016).

I.  STATEMENT OF FACTS

Rhonda Maillard testified to the following: In 2007, Plaintiffs purchased a home located

on Terra Lane in Veneta, Oregon.  (*See* Def's Ex A at 9.)  Plaintiffs ran their side business, Whip

It Light Rods, out of the Terra Lane property for some period of time through December 2013.

---

[1] To the extent Plaintiffs' exhibit packet included any exhibit labels, they were the labels used by
Defendant.  (*See, e.g.,* Exs B, E, F.)  Other documents in Plaintiffs' packet were documents filed in this case, such as
the Complaint, notices, correspondence between the parties, and court-issued documents.

(*See id*.; Def's Ex D at 15.) Plaintiffs moved out of the Terra Lane property in December 2013 and into a new home. (Def's Ex D at 15.) Plaintiffs listed the Terra Lane property for sale in October 2013. (*Id.*) Thereafter, on the advice of a financial advisor, they reached out to their mortgage lender and received preapproval to sell the property by short sale. (*See id*.) In 2015, Plaintiffs sold the Terra Lane property by short sale. (*See* Def's Ex B at 11-15.)

The parties dispute the impact of those events on Plaintiffs' 2015 and 2016 Oregon income tax liabilities. Rhonda testified that she prepared and filed both Plaintiffs' 2015 and 2016 returns using TurboTax. She acknowledged making several mistakes.

A.      *Tax Year 2015*

Due to a lack of supporting documentation, Defendant disallowed Plaintiffs' Schedule C business expenses ($8,509 for a home office and $4,887 for depreciation) associated with an LED Lit Whip Manufacturing business. (Def's Ex A at 4; Ex G at 3.) The address listed for that business is Plaintiffs' new home, not the Terra Lane property. (*See id.*) Also due to a lack of documentation, Defendant disallowed a $38,782 loss that Plaintiffs reported on the sale of the Terra Lane property and determined that Plaintiffs realized a gain of $22,011 on that sale. (Def's Ex G at 3.) Based on a 1099-C issued to Plaintiffs reporting a forgiveness of debt associated with the Terra Lane short sale, Defendant determined Plaintiffs received other income of $119,791. (*Id.* at 4.) Finally, Defendant made various adjustments to Plaintiffs' Schedule A: increasing deductions for real estate taxes and mortgage interest to include amounts claimed on Schedule C, and disallowing employee business expenses (primarily mileage) due to lack of substantiation. (*Id.*) At trial, Plaintiffs declined to pursue their claim for employee business expenses. Defendant asserted that Plaintiffs' Schedule E expenses associated with the Terra Lane property should be disallowed based on their new position that it was a principal residence.

1.    *Amended return*

Rhonda testified that Plaintiffs attempted to resolve several of the aforementioned disputes by submitting an amended return to Defendant, but their return was rejected. (*See* Def's Ex D at 20 (Plaintiffs' email to Defendant dated January 1, 2020, referenced an attached amended return and asserted "we are still able to send in an amendment per Oregon tax law").) Her email explained that the amended return removed auto mileage and related expense reimbursements from Kevin's employer, and claimed expenses associated with the business use of 800 square feet of their home. (*Id.*) She did not understand why Defendant rejected Plaintiffs' amended return and testified that, at one point, Palmer stated to her that Defendant could not accept the return because of the open appeal in court.

2.    *Cancellation of indebtedness income*

Defendant adjusted Plaintiffs' 2015 tax return to include $119,791 of "other income." (*See* Def's Ex G at 4.) Defendant contends that, as a result of the short sale of Plaintiffs' Terra Lane home, a Form 1099-C was issued by Freedom Mortgage for the Forgiveness of Debt in the amount of $119,791, that "[t]he forgiveness of [d]ebt is taxable" as "other income[,]" and that Plaintiffs did not include such income on their 2015 return. (*See* Def's Ex E at 2; Def's Ex C at 4.) Plaintiffs allege that they never received a Form 1099-C. (Def's Ex D at 15.) However, Plaintiffs' IRS transcript indicates that a Form 1099-C was issued. (*See* Def's Ex E at 2.) Plaintiffs argue that because the Terra Lane home was their principal residence within the meaning of the Mortgage Forgiveness Debt Relief Act of 2007, they "should not be required to pay tax on the forgiven amount of the short sale." (Def's Ex D at 15-16.[2])

---

[2] Plaintiffs used the term "primary residence" but the Mortgage Forgiveness Debt Relief Act (discussed below) uses the term "principal residence," so the court defers to the language in the Act.

### 3. *Loss reported on sale of business property*

Rhonda testified that Plaintiffs had previously used a portion of the Terra Lane property to run their side business, but maintains that the property was their principal residence, rather than a business property.[3] Despite that characterization, Plaintiffs reported a $38,782 loss for the sale of the Terra Lane property on Form 4797 – Sales of Business Property. (Def's Exs A at 1, 9; G at 3.) Defendant determined that Plaintiffs' Form 4797 should instead reflect a gain of $22,011, based on the sale price compared to the basis at the time the residence was converted to business property, the end of 2013. (*See* Def's Ex C at 3-4.)

### 4. *Loss deduction for rental real estate*

On Schedule E Part I – Income or Loss From Rental Real Estate and Royalties, Plaintiffs reported a total rental real estate loss of $25,013 for the Terra Lane property. (Def's Ex A at 6, 9.) The loss is based on expenses of $13,500 in commissions; $900 in insurance; $4,650 in depreciation; and $5,963 in closing costs. (*Id.* at 6.) The parties dispute whether the Terra Lane property was ever used as a rental property. Rhonda testified that she erroneously reported the loss on Schedule E and that Terra Lane was never a rental property. Palmer testified that, during a prior phone call with Plaintiffs, they told him that the property had been converted to a rental. (*See also* Def's Ex C at 3 ("In a conversation on January 27, 2021[,] Rhonda stated that the home was converted into a rental house at the end of 2013").) Palmer testified that he never found any third-party evidence that the Terra Lane property was offered for rent.

### 5. *Schedule C business expenses*

Rhonda testified that Plaintiffs used 800 square feet of their new home to run their side business. (*See* Def's Ex A at 17 (Form 8829).) Kevin testified that the business grew over time.

---

[3] As of 2015, Plaintiffs reported using their new home to run that business. (*See* Def's Ex A at 3.)

He used the garage and part of the living room to build and ship products. Plaintiffs' claimed home office was 27.66 percent of the property. (*Id.*) They deducted expenses for mortgage interest, real estate taxes, insurance, utilities, and deprecation. (*Id.*) Defendant allowed expenses for mortgage interest and real estate on Plaintiffs' Schedule A but disallowed the other expenses due to lack of supporting documentation. (Def's Ex C at 3.) Plaintiffs evidently concluded that they need not provide any supporting documentation. (Def's Ex D at 15 (letter to Defendant stating "[n]o additional paper should have to be included" because it is a "standard deduction").)

B.      *Tax Year 2016*

Due to lack of documentation, Defendant disallowed Plaintiffs' Schedule C business expenses, again moving claimed mortgage interest to Schedule A, and disallowed Plaintiffs' Schedule A employee business expenses. (*See* Def's Ex C.) Plaintiffs submitted an amended return to Defendant for the 2016 tax year but did not identify the items amended. (Def's Ex D at 20.) At trial, Plaintiffs expressed surprise by the inclusion of tax year 2016 in the scope of trial. Plaintiffs did not present any evidence but expressed concern with respect to being provided an opportunity to challenge their 2016 tax liability. Plaintiffs thought they would have another opportunity to present evidence for the 2016 tax year.

## II. ANALYSIS

A threshold issue raised by Plaintiffs is whether Defendant was required to accept their amended returns. The issues presented for the 2015 tax year are: (1) whether, as a result of the short sale of the Terra Lane property, Plaintiffs received taxable cancellation of indebtedness income; (2) whether Plaintiffs are entitled to claim a loss on the sale of the Terra Lane property; (3) whether Plaintiffs are entitled to deduct a rental loss on the Terra Lane property resulting from expenses associated with that property; and (4) whether Plaintiffs are entitled to a home

office deduction for business conducted at their new home. For the 2016 tax year, the issue is whether Plaintiffs provided sufficient evidence to change any of Defendant's adjustments.

"In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief * * *." ORS 305.427.[4] A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). As the parties seeking affirmative relief, Plaintiffs bear the burden of proof by a preponderance of the evidence.

This court has statutory authority "to determine the correct amount of deficiency, even if the amount so determined is greater or less than the amount of the assessment determined by the Department of Revenue, and even if determined upon grounds other or different from those asserted by the department[.]" ORS 305.575. Because Oregon law adopts the definition of "taxable income" found in section 63 of the Internal Revenue Code (IRC), federal law defining "taxable income" applies in this case.[5] ORS 316.022(6); *see also* ORS 316.048.

A.    *Plaintiffs' Amended Returns*

Plaintiffs submitted amended returns to Defendant and take issue with Defendant's failure or refusal to accept those returns. Plaintiffs did not cite to any authority with respect to this issue.

---

[4] References to the Oregon Revised Statutes (ORS) are to the 2013 and 2015 versions. Unless otherwise indicated, the 2013 and 2015 versions of the referenced statutes are identical.

[5] Section 63 of the IRC generally defines "taxable income" as "gross income minus the deductions allowed by this chapter." IRC § 63(a).

Generally, "the law imposes no deadline on a taxpayer for filing amended returns." *Tiedeman v. Dept. of Rev.*, TC-MD 000748C, 2001 WL 238449 at *2 (Or Tax M Div Jan 17, 2001). However, the period in which a taxpayer may claim a refund is limited. *See* ORS 314.415(2)(a). Once a return is filed, the department has three years to examine or audit the return and issue a notice of deficiency. ORS 314.410(1); *see also* ORS 305.265(2). The department then assesses the deficiency, and the taxpayer may appeal the notice of assessment to this court. *See* ORS 305.265(7), (15); ORS 305.275(1)(a)(A); ORS 305.280(2). Filing an amended return does not circumvent the statutory timelines imposed to appeal a notice of assessment. *See, e.g., Juarez v. Dept. of Rev.*, TC-MD 060680C, 2007 WL 283127 (Or Tax M Div Jan 4, 2007) (taxpayer's appeal was untimely despite amended return submitted to department one year after notice of assessment).)

"Once a tax year has been placed in issue before the court, both parties are obligated to raise all issues and defenses in connection with that claim so that the claim may be finally resolved." *U.S. Bancorp v. Dept. of Rev.*, 15 OTR 13, 17 (1999). The entire tax year appealed is open for review. *See Carson v. Dept. of Rev.*, TC-MD 170296R, 2018 WL 4944956 at *3 (Or Tax M Div Oct 9, 2018). The court reviews the case *de novo*, meaning anew, and – as noted above – has authority to find the correct amount of deficiency. ORS 305.425(2); ORS 305.575.

Here, it appears Plaintiffs sent amended returns to Defendant during the course of this litigation. Plaintiffs' email suggests the 2015 amended return concerned items that were previously adjusted by Defendant, including employee business expenses and home office expenses.[6] During litigation, Defendant may consider an amended return as part of an attempt to settle the case. *See, e.g., Christenson v. Dept. of Rev.*, 18 OTR 269, 271 (2005) (after taxpayer

---

[6] Plaintiffs' email did not identify the items amended for 2016.

filed "zero returns" resulting in notices of assessment, the department "contacted taxpayer in an effort to bring taxpayer into compliance with Oregon personal income taxation laws" and taxpayer submitted "amended returns" in response).) If the parties are unable to reach a settlement, the ultimate decision lies with the court. Even if Defendant failed or refused to consider Plaintiffs' amended returns, Plaintiffs received an opportunity to present their claims to this court at trial.

B.    *Tax Year 2015*

1.    *Cancellation of indebtedness income*

The parties dispute whether Plaintiffs received taxable cancellation of indebtedness income of $119,791 due to the short sale of the Terra Lane property.[7] Plaintiffs argue that, even if they received such income, it is excludable from taxation under the Mortgage Forgiveness Debt Relief Act of 2007 because the Terra Lane property was their principal residence.

In general, income from discharge of indebtedness is taxable. *See* IRC § 61(a)(11). However, the Mortgage Forgiveness Debt Relief Act of 2007 was passed to amend the IRC, including section 108, "to exclude discharges of indebtedness on principal residences from gross income, and for other purposes." Mortgage Forgiveness Debt Relief Act of 2007, Pub L 110-142,121 Stat 1803 (2007); *see also* IRC § 108(a)(1)(E). The Act "usually permits taxpayers to exclude taxes on a debt reduced or forgiven through mortgage restructuring and mortgage debt forgiven because of foreclosure on their principal residence * * *." *Davidson v. JP Morgan*

---

[7] Plaintiffs note that they never received a Form 1099-C with respect to the sale of the Terra Lane property. Plaintiffs' exact argument, if any, regarding the 1099-C is unclear. Plaintiffs' IRS transcript indicates that a 1099-C was issued. Even if Plaintiffs failed to receive the 1099-C, that does not impact whether a cancellation of debt occurred. *See Cascade Door/Window & Construction Co. v. Dept. of Rev.*, TC-MD 110589N, 2012 WL 2903353 at *2-3 (Or Tax M Div July 17, 2012) ("[i]ssuance of a Form 1099-C is evidence of an intention to cancel the loan, but is not dispositive[;]" taxpayer was required to report the cancellation of indebtedness income even if no 1099-C was issued or received) (internal quotations and citation omitted).

*Chase, N.A.*, WL 4924128 n 7 (SD Tex, 2014) (citation omitted). "The determination of whether a discharge of indebtedness has occurred for tax purposes is extremely fact specific, often turning on the subjective intent of the creditor as manifested by an objectively identifiable event." *Owens v. Comm'r*, 84 TCM (CCH) 419 (2002), 2002 WL 31194556 at *4 (US Tax Ct).

IRC section 108 provides that gross income does not include cancellation of indebtedness income, so long as the discharged debt is "qualified principal residence indebtedness." *See* IRC § 108(a)(1)(E). The term "qualified principal residence indebtedness" means "acquisition indebtedness" related to the taxpayer's principal residence, within the meaning of section 163(h)(3)(B). *See* IRC § 108(h)(2). IRC section 163 defines the term "acquisition indebtedness" as "any indebtedness which — (I) is incurred in acquiring, constructing, or substantially improving any qualified residence of the taxpayer, and (II) is secured by such residence." IRC § 163(h)(3)(B)(i). It further provides that a "qualified residence" is the taxpayer's principal residence, within the meaning of section 121. IRC § 163(h)(4)(A)(i).

IRC section 121 allows a taxpayer to exclude gain on the sale of property if, during the five years preceding the sale, the property was taxpayer's principal residence for two years or more. The accompanying treasury regulation provides that, "whether property is used by the taxpayer as the taxpayer's principal residence depends upon all the facts and circumstances."[8] Treas Reg § 1.121-1(b)(2). Relevant factors include:

"(i) The taxpayer's place of employment;

"(ii) The principal place of abode of the taxpayer's family members;

"(iii) The address listed on the taxpayer's federal and state tax returns, driver's license, automobile registration, and voter registration card;

---

[8] This regulation references the scenario of a taxpayer using more than one property as a residence. *See* Treas Reg § 1.121-1(b)(2).

"(iv) The taxpayer's mailing address for bills and correspondence;

"(v) The location of the taxpayer's banks; and

"(vi) The location of religious organizations and recreational clubs with which the taxpayer is affiliated."

*Id.* The court did not receive evidence on most of those factors, but the parties appear to agree, and the court finds, that Plaintiffs acquired the Terra Lane property in 2007 and lived there until December 2013. No evidence was presented indicating that Plaintiffs had a second home that could have been their principal residence during that time.

Thus, the court concludes that the Terra Lane property (1) was their "principal residence under IRC section 121; and (2) was a "qualified residence" under IRC section 163(h). As a result, Plaintiffs' discharged indebtedness on the Terra Lane property is "qualified principal residence indebtedness" under IRC section 108 and is excludable from gross income.

2.      *Loss reported on sale of business property*

The next question is whether Plaintiffs are entitled to deduct a loss on the sale of the Terra Lane property. Plaintiffs reported a loss of $38,782 on Form 4797 – Sales of Business Property. Defendant determined that Plaintiffs used the wrong basis and found that they realized a $22,011 gain on the sale. In the alternative, Defendant argues that Plaintiffs' Schedule E rental expenses should be disallowed if the Terra Lane property was not a business property.

A taxpayer may deduct losses incurred in a trade or business, or in a transaction entered into for profit. IRC § 165(c). "However, a taxpayer may not deduct the loss on the sale of his or her personal residence * * * unless the taxpayer converted the residence to an income-producing property." *See Mitchell v. Comm'r*, 82 TCM (CCH) 732 (2001), 2001 WL 1196204 at *6 (US Tax Ct); *see also* Treas Reg § 1.165-9(a) (a taxpayer may only deduct a loss on the sale of a personal residence if prior to the sale, the property was converted from personal use to an

income-producing use and used for such purposes up until the time of its sale). Whether a personal residence has been converted to an income-producing purpose, such as a rental, turns on factors including:

> "(1) the length of time the house was occupied by the taxpayer as a personal residence before placing it on the market for sale; (2) whether the taxpayer permanently abandoned all further personal use of the house; (3) the character of the property (recreational or otherwise); (4) offers to rent; and (5) offers to sell."

*Hutsenpiller v. Dept. of Rev.*, TC-MD 180167N, 2019 WL 1561585 at *3 (Or Tax M Div Apr 10, 2019) *citing Newcombe v. Comm'r*, 54 TC 1298, 1299-1301 (1970).

Here, the only evidence indicating that Terra Lane was converted to a business property is (1) Plaintiffs' tax return, including Form 4797 and Schedule E, characterizing the Terra Lane property as a business property and a rental property; and (2) Palmer's recollection that Rhonda told him during a phone call that Plaintiffs converted the property to a rental. As best the court can understand, Plaintiffs mistakenly characterized Terra Lane as a business property on their 2015 return because they previously ran their business, Whip It Light Rods, out of the property.[9] In this litigation, they characterized the property as their personal residence and maintained that they never offered it for rent. With respect to Palmer's recollection of Rhonda's statement during a phone call, the court notes that "[t]here are many possibilities for misunderstanding with oral communication." *Mahler v. Dept. of Rev.*, 11 OTR 367, 370 (1990). Without more – such as independent documentary evidence that the Terra Lane property was offered for rent – the court concludes that it was Plaintiffs' personal residence and no loss on the sale is allowed. Based on the court's finding above that Terra Lane was their principal residence under IRC

---

[9] The court does not take Plaintiffs' erroneous tax filings lightly. In her testimony, Rhonda acknowledged making numerous mistakes when she prepared the 2015 return and explained that Plaintiffs were dealing with significant health and financial challenges at the time.

section 121, Plaintiffs may exclude any gain on the sale of that property.

3.      *Loss deduction for rental real estate*

Defendant maintains that Plaintiffs' Schedule E expenses, totaling a loss of $25,013, should be disallowed if the court finds that Terra Lane was not a rental property. The court agrees. Terra Lane was previously Plaintiffs' personal residence and they identified no legal authority supporting a deduction for the expenses claimed: commissions, insurance, depreciation, and closing costs. *See* IRC § 262 (no deduction for "personal, living, or family expenses").

4.      *Schedule C business expenses – home office*

Plaintiffs claimed Schedule C business expenses, including a deduction of $8,509 for an 800 square foot home office. Generally, a taxpayer may not deduct expenses for a dwelling unit used as a residence. IRC § 280A(a). An exception applies for a dwelling unit "exclusively used on a regular basis" for certain business uses. IRC § 280A(c)(1), (2). Deductions are "a matter of legislative grace" and taxpayers must be prepared to produce "any books, papers, records or memoranda bearing upon [any] matter required to be included in the return[.]" *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992); ORS 314.425(1); *see also Gapikia v. Comm'r*, 81 TCM (CCH) 1488 (2001), 2001 WL 332038 at *2 (US Tax Ct) (requiring taxpayers "to maintain records sufficient to substantiate their claimed deductions"). Plaintiffs declined to offer any documentary evidence in support of their claimed deduction and have, therefore, failed to meet their burden of proof.[10]

C.      *Tax Year 2016*

Plaintiffs expressed surprise and concern that the 2016 tax year was included in the scope

---

[10] Plaintiffs stated that they did not need to provide documentation because the home office deduction is "standard." A "safe harbor" home office deduction at a standardized rate may be allowed for an office that does not exceed 300 square feet. *See* Rev Proc 2013-13. Plaintiffs' home office, at 800 square feet, does not qualify.

of trial. They presented no evidence in support of their claims for the 2016 tax year.

As discussed above, because Plaintiffs are the party seeking affirmative relief, they bear the burden of proof. ORS 305.427. Plaintiffs "have discretion to pursue certain issues and concede others." *See Carson*, 2018 WL 4944956 at *6.[11] The court does not bear the responsibility of bringing up issues that are not "affirmatively brought before the court. A failure to pursue or litigate an issue is not a lack of opportunity." *See id.*

Here, Plaintiffs explicitly included the 2016 tax year in their appeal by writing it on their Complaint and attaching Defendant's Notice of Assessment for the 2016 tax year. (*See* Compl at 1, 6.) Defendant's pleadings repeatedly referenced the 2016 tax year, reminding Plaintiffs that the 2016 tax year was included in the scope of the appeal. (*See* Ans at 2 (responding to issues raised for 2016); Def's Mot at 3, Oct 28, 2021 (requesting documents for the 2016 tax year); Def's Exs A-E (tax year 2016 exhibits).) Plaintiffs received numerous opportunities to discuss the scope of this appeal during three case management conferences and an initial trial date in May 2022, that was rescheduled at Plaintiffs' request. Having received no evidence from Plaintiffs, the court finds no basis to change any of Defendant's 2016 adjustments.

### III. CONCLUSION

Upon careful consideration, the court concludes that Plaintiffs may exclude cancellation of indebtedness income realized in 2015 on the sale of the Terra Lane property. Plaintiffs may not deduct a loss on the sale of that property in 2015 and are not required to pay tax on any gain on that sale. Plaintiffs' 2015 rental loss claimed on the Terra Lane property is disallowed.

---

[11] In *Carson*, the taxpayers were barred from litigating an issue in a new appeal that was encompassed in the scope of their prior appeal, but which they failed to affirmatively raise at trial in the prior appeal. 2018 WL 4944956 at *6. The court noted that, on at least three occasions, the defendant had provided notice to the taxpayers that the issue was encompassed in the scope of the original appeal. *Id.*

Defendant's adjustments to Plaintiffs' 2015 Schedule C expenses are upheld.   Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' 2015 tax year appeal is granted in part and denied in part.

IT IS FURTHER DECIDED that Plaintiffs' 2016 tax year appeal is denied.

Dated this \_\_\_\_ day of April 2023.


ALLISON R. BOOMER
PRESIDING MAGISTRATE


*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*

*This document was signed by Presiding Magistrate Allison R. Boomer and entered on April 3, 2023.*